## NAVE, Surviving Partner, &c. *vs.* BERRY et al.

1. When the contract of lease is silent, the law implies an obligation on the part
   of the lessee to use the property in a proper and tenant-like manner, without
   exposing the buildings to ruin or waste by acts of omission or commission,
   and not to put them to a use or employment materially different from that in
   which they are usually employed.
2. The lessees have, by implication, the right to put the premises to such use and
   employment as they please, not materially different from that in which they
   are usually employed, to which they are adapted, and for which they were
   constructed; they have also the common law right to assign or transfer their
   interest to a third person, to put him in possession of the property, and to
   clothe him with all their rights and privileges under the contract, and this
   right can only be restrained by express stipulation.
3. A stipulation in a lease "to repair and deliver up" binds the lessee to rebuild,
   in case of loss by fire during the term; but a stipulation "to deliver up"
   simply imposes an obligation against holding over.
4. In the construction of written contracts which are in themselves perfect, all
   incidents or legal implications form part and parcel of the contract, as if ac-
   tually incorporated therein.
5. A count in assumpsit on a lease, not under seal, which avers the performance
   by the plaintiff of his part of the agreement, and the non-payment of the
   rent by the defendant, and then alleges that the buildings were destroyed by

fire, and in consequence thereof were not delivered up, but were wholly lost, is not demurrable, either for duplicity, or for misjoinder of breaches; the non-payment of the money is the only breach alleged, and the other allegations are mere surplusage.

6. Where a contract contains several stipulations, the pleader may assign in each count as many breaches as he pleases, and each breach must be upon a distinct stipulation; but he cannot assign in one count two breaches of the same stipulation.

7. When the lease contains no express stipulation against the lessee's right to as sign his term, parol proof is not admissible to show that the premises were to be used and occupied by the lessee himself.

8. When a house is leased which was built for a hotel, and the lease contains no stipulation as to the employments which shall be carried on in it, the lessee may use it as a seminary for young ladies; or he may underlet it to another, to be used for that purpose.

ERROR to the Circuit Court of Perry.

Tried before the Hon. GEO. D. SHORTRIDGE.

This was an action of assumpsit, brought by the plaintiff in error against the defendants in error, in order to recover a certain amount of rent alleged to be due on a contract of lease, and also for damages occasioned by the burning, during the term, of the buildings and improvements on the lot and premises let.

The contract on which the suit is brought is as follows, to-wit: "By the first day of January next, we, or either of us, promise to pay Jesse B. Nave, surviving partner of Nave & Sloan, or bearer, two hundred and forty-seven dollars and fifty cents, for the rent of the old tavern, known as the "Planters' Hotel," in the town of Marion, for the year eighteen hundred and fifty; and the said house, with the lots and appurtenances thereunto attached, to be delivered up on the 1st day of January, 1851. We also promise and agree to pay the taxes on the same, for value received, January 1st, 1850.

A. BERRY,

P. B. LAWSON,

J. M. STONE."

The plaintiff declared in four special counts, to which were added the money counts. The first count sets out the written contract, of which the above is a copy, calling it a promissory note, and alleging a breach in the non-payment of the money. The count then goes on to allege that Berry, one of

the defendants, went into possession of the premises, in pursuance of the contract, and that on the 10th day of April, 1850, the buildings were consumed by fire; and that defendants, in consequence of said destruction, had failed to deliver up the house and appurtenances to the plaintiff; by means whereof, the house and appurtenances were wholly lost to the plaintiff. He avers that the house and buildings were worth two thousand dollars, and the defendants, in consideration thereof, promised to pay, &c.

The second count sets out the above described written contract, calling it a note or instrument in writing, and further alleges that the defendants then and there undertook and promised that they would use the premises in a tenant-like and proper manner during the term; that Berry, one of the defendants, with the consent of the other defendants, took possession of the said house and premises, and then and there promised and agreed with the plaintiff that he, the said Berry, himself should occupy the said premises for the said term; but the said Berry, with the consent of the other defendants, and without the consent of the plaintiff, underlet or assigned the lease of the said premises to one Graham, for the purpose of keeping therein a ladies' school or seminary; that said Graham went into the possession of the house, with his school, consisting of some thirty or forty boarders and eight or ten teachers; that the said house and appurtenances, on the 10th of April, 1850, were destroyed by fire, so that they were wholly lost to the plaintiff; with the further averment, that the defendants behaved in regard to the premises in an untenant-like and improper manner; that said buildings were worth two thousand dollars, and defendants promised to pay, &c.

The third count sets out the written agreement of lease, calling it "a certain other instrument in writing," and defining it to be a contract of lease, avers that said defendants agreed that the said Berry should himself occupy the premises; that he took possession thereof; that after the said Berry had so taken possession, he violated his agreement, re-let and surrendered the premises to the said Graham, the principal of the Marion Female Seminary; that the latter took possession thereof; that in consequence of the number of his schol-

ars, he caused to be occupied two rooms that were not occupied while Berry was in the house, and which he, Berry, would not have occupied; that on the 10th of April, 1850, the house and appurtenances were consumed by fire; that the fire originated in one of the above mentioned rooms, and was caused by the carelessness of the said Graham and his pupils; that the buildings were worth two thousand dollars, and were wholly lost to the plaintiff; and that defendants promised to pay, &c.

The fourth count is upon the agreement, and sets it out literally; avers that the premises were delivered to the said Berry in pursuance of the contract; that the premises were on the 10th of April, 1850, consumed by fire, so that they could not be re-delivered at the expiration of the term, and were lost to the plaintiff; that said buildings were worth two thousand dollars; by means whereof the defendants became liable, &c.

There was a demurrer to each of these counts separately. The demurrer was sustained to the first, second and fourth counts, and overruled as to the third. On this there was issue, as well as upon the common counts.

On the trial, a bill of exceptions was allowed, by which it appears that the plaintiff, in order to sustain his case, offered in evidence the written instrument above mentioned; that Berry went into the possession of the premises about the 1st of January, 1850, and there remained until about the 1st of March following, when he surrendered said premises to Alex. Graham, who had the charge of a school in the town of Marion, known as the "Marion Female Seminary," consisting of forty-five or fifty young ladies, and six or eight teachers, who boarded and slept in the same house, besides some thirty or forty day scholars; that said Graham took possession of the said house and premises, and moved his school therein; that they occupied the house and premises until the 10th of April following, when the same were destroyed by fire; that the house was built for a hotel or private dwelling, and was not constructed after the plan of buildings for large seminaries or schools. There were about seventeen rooms in the main building. The fire originated in a shed room, the chimney of which smoked badly in consequence of the chimney

being very low—not rising more than about ten or twelve inches above the roof of the shed. There was also a hole in it, from the flue to the inside of the room, a short distance below the ceiling. Plaintiff also offered evidence tending to show that said house and premises, when used as a hotel, had rented for about three hundred dollars per annum, and that the buildings destroyed were worth from eight to ten hundred dollars.

In the progress of the cause, the plaintiff offered to show by parol that said building and appurtenances were rented to said defendants, to be occupied by said defendant, Berry, during the year 1850, as a private residence, but defendant objected to the admission of this evidence; the court sustained the objection, and the plaintiff excepted.

The defendant then proved, that said Graham and his scholars were very diligent and careful in guarding against fire, while they occupied the said premises; that the building was old, dilapidated and liable to take fire; that a fire had broken out in said building before said Graham got possession, and had been suppressed; that the chimney in the school room, near which the fire commenced, which destroyed the said houses, was ill-constructed; that one witness had noticed, several times, smoke issuing through the crevices thereof, near the top; and that said room, where the fire commenced, was occupied at the time of the said fire, by two young ladies, who were very prudent and careful. They further proved that, in the opinion of some witnesses, who had visited the room, the chimney in this room was safe, and that there was a pipe running up through the flue of said chimney. It was also proved, that there was but little fire in the fire-place of said shed room on the morning said buildings were consumed. It was in proof that, while Berry was in the possession of the house, some of the rooms thereof were occupied by a painter, and others of them by a shoemaker; and that said painter used the same shed room to cook in.

On this evidence, the court charged the jury:

1. That, although the house and appurtenances mentioned in the instrument of writing sued on, were destroyed by fire about the 10th of April, 1850, the defendants were not liable

for the same under the contract shown in said instrument, unless there was proof of negligence in the defendants or said Graham;

2. That said defendants, under said contract so sued on, had a right to underlet said premises to said Graham, to be occupied by him and his school, and that said defendants would not be liable for the value of said house and appurtenances which were destroyed by fire, if the jury should believe that said Graham used due and proper care and diligence in guarding against accidents by fire.

To these charges the plaintiff excepted, and then requested the court to charge the jury as follows:

1. That, if they believed that said lot, house and appurtenances, were rented by defendants to be occupied as a private residence by one of said defendants, and that defendants rented or surrendered up said premises to be occupied by said Graham and his school, and that in consequence of said Graham and his school occupying said premises with his school, the room in which the fire originated was occupied, and that there was no evidence to show that plaintiff had in any way assented thereto, then the defendants would be liable to the plaintiff for the value of the house and appurtenances so destroyed by fire.

2. That, if the jury believed that defendants had rented said premises from said plaintiff, to be occupied by said Berry, either as a hotel or private residence, and that said Planters' Hotel and appurtenances on said lot were constructed for a hotel or private residence, and that defendants had afterwards rented out or surrendered up the same, to be occupied by said Graham and his said school, and that in consequence thereof, notwithstanding said Graham may have used extraordinary care and diligence, the same were destroyed by fire, then the plaintiff would be entitled to recover in this suit the value of the houses destroyed by fire.

3. That, if the jury believed that defendants had rented said premises from said plaintiff, to be occupied by some one of said defendants, and that defendants had surrendered up the same to be occupied by said Graham and his school, and that in consequence thereof the said house and appurtenances were destroyed by fire, then the plaintiff could recover the

value of the buildings consumed, although there was no neg-
ligence proved; which three several charges the court refused.
to give, to which plaintiff excepted.

The errors assigned are, the ruling of the court on the de-
murrers to the first, second and fourth counts of the declara-
tion, and the matters found in the bill of exceptions.

I. W. GARROTT, for plaintiff in error:

1. The court erred in sustaining the demurrer to the first
count in the declaration, in which the instrument sued on is
set out and two breaches assigned; one on each of the stipu-
lations in the bond, to-wit: the non-payment of the money,
and the failure to deliver the house, and a promise to pay for
said house on January 1, 1851. However correct the court
might be in determining that the note sued on did not make
the defendants responsible for failing to deliver the house, the
count is certainly good so far as the non-payment of the mon-
ey is concerned.

2. The second count is based on the promise to deliver the
house, &c., and charges that defendants "promised and agreed
with said plaintiff, that said Berry should possess, occupy
and enjoy the said premises," and that, although said premi-
ses were so leased, that said defendants violated this their
contract, and consented and agreed that Mr. Graham and his
school should take possession and use the same, and that
Berry should leave it; all of which was done without assent
of plaintiff. The demurrer to this count should have been
overruled, because it shows a good right of action. If the
lot was leased to be occupied by Berry and defendants, then
leased to Graham, this was a violation of the contract and
defendants are responsible for the consequences.

3. The evidence offered to show that the contract was, that
Berry should use the hotel as a private residence, was proper,
and the court erred in its rejection. This did not add to, or
vary the effect of the note, but was an independent stipula-
tion as to which the note was silent. McCreary v. McCreary,
5 Gill. & John. 147, 156-7-8; Cowen & Hill's Notes, 1473-4;
West & West v. Kelly, 19 Ala. 353.

4. The defendants expressly and clearly stipulate that they
will deliver up the house with the lots and appurtenances, on

the 1st day of January, 1851. There is no mistaking of the meaning, and there is no room for speculation as to the intention of the defendants. Their promise to deliver the house is as explicit and unquestionable as if they had promised to deliver a thousand bushels of corn, a horse, or any other thing, at the same time and place. The defendants, therefore, have to respond in damages for a breach of their covenant, although that breach was occasioned by a destruction by fire. Chitty on Contracts, 734–5, late edition; Story on Contracts, § 975; Fowler v. Botts, 4 Mass. 63; Philips v. Stevens, 16 Mass. 238; Walton v. Waterhouse, 3 Sanders' Rep., top p. 779, note 2; Bullock v. Dommitt, 6 D. & E., top p. 304; Morrow v. Campbell, 7 P. 41; Reed v. Edwards, 7 P. 508, 512; Ross v. Overton, 3 Call, marg. p. 309; Pym v. Blackburn, 3 Vesey, Jr., 34; Shubrick v. Salmon, 3 Burr. 1637.

5. The court erred in its refusals to charge as asked. For, if the jury believed that the premises were rented to defendants, to be occupied by Berry, then it was a violation of the contract for defendants (Berry included) to underlet to Graham and give up possession to him. A man might well lease a house to be occupied by one tenant, who would not consent, that his house should be converted into a public school, and be used as such. This principle is sustained by the following authorities: Hooks v. Smith, 18 Ala. 338, and authorities cited in brief for defendant in error, especially Spencer v. Pilcher, 8 Leigh 565; case in 3d Humphreys, where a negro was hired generally, and was put to blasting rock and injured, decides that the party so permitting him to be used is liable in damages.

The charges asked are not abstract, because sufficient facts are shown in the bill of exceptions to sustain them, viz: the construction of the house, the amount of rent which defendants were to pay, the purposes for which the house had been used, &c., &c. It was the province of the jury, and not of the court, to draw the proper inference from these facts.

W. M. MURPHY, contra:

Nothing is urged against the propriety of the action of the court in sustaining the demurrer to the counts in the declaration, except as to the first, and it is bad because it contains

two breaches. It is also an attempt to declare for the burning of the house.

2. The tenant had a right to underlet, and there was no covenant to re-build; and consequently no liability for the destruction of the house. Maggort v. Hansbarger, 8 Leigh 532; Warner v. Hitchins & Leonard, 5 Barbour's S. C. R. of New York, p. 666. These authorities are full to the point for defendant. See also, Wilkinson v. Mosely, 18 Ala. 288.

The note contained the full stipulations of the parties, and the terms cannot be varied or added to without infringing the rule inhibiting parol proof when the contract is in writing. Walker v. Clay & Clay, at present term; Graham v. Tankersley, 8 Ala 247; Hooks v. Smith, 18 Ala. 342. The rule is, when the writing does not profess to set out the whole contract, then parol evidence may be received, but then not to change the legal effect of the written contract; when it shows a complete and full contract, parol evidence cannot be received to add to or explain the paper.

The charges requested must have been free of error, and it is insisted that they are not.

Again, they were abstract. The proof did not conduce to raise the case, upon which the charges were sought to be predicated.

GIBBONS, J.—The first duty imposed upon this court, in order to a decision of the various questions presented by the record, is, the interpretation of this written contract. So far as its stipulations upon its face are concerned, there is little difficulty. The contract is one of lease, not executory in its nature, but executed. The lessor, by its express stipulations, has the right to have the money named in the writing as rent paid at the time it is to become due, certain taxes named paid by the lessees, and at the close of the term to have the premises restored to him. On the part of the lessees, there is no right expressly stipulated; these are all left entirely to the implications of law. On the part of the lessor, in addition to the express stipulations in his favor, the law implies his right to have the property used in a proper and tenant-like manner, without exposing the buildings to ruin or waste, by acts of omission or of commission; and also, that the premi-

ses should not be put to a use or employment materially different from that in which they are usually employed. To the extent of these implied rights on the part of the lessor, the law implies also a corresponding obligation on the part of the lessees.

The lessees have, by implication, the right to possess and enjoy the property during the term specified, and to put it to such use and employment as they please, not materially different from that in which it is usually employed, to which it is adapted, and for which it was constructed. They have the further right to assign or transfer their interests to a third party, to put him in possession of the property, and to clothe him with all the rights and privileges which they possess under the contract. This right of assignment on the part of the lessee is a common law right, and can only be restrained by express stipulation. 4 Kent Com. 96.

On the face of the contract, there is the express obligation on the part of the lessees to deliver up "the house, with the lots and appurtenances thereunto attached," at the expiration of the term. There is no obligation to repair, but simply "to deliver up;" meaning to surrender back to the lessor. The decisions upon this subject make a distinction between an obligation "to repair and deliver up," and one simply "to deliver up." Whilst the former binds the obligor to re-build in case of loss by fire during the term, (Phillips v. Stevens, 16 Mass. 238,) the latter is construed to mean simply an obligation against holding over; and if the buildings are burned or destroyed during the term, without the fault of the lessee, he is not bound to re-build, or to pay for the improvements so destroyed. Maggort v. Hansbarger, 8 Leigh 532; Warner v. Hitchins & Leonard, 5 Barbour 666. This distinction we adopt.

In the construction of written contracts, with a view to test the competency of parol evidence, offered for the purpose of showing the whole contract, or some part of it not contained in the writing, we deem it necessary to say, that an incident to a contract forms part and parcel of it. If the contract, by its construction and legal effect, invests a party with a right, it is the same as if the right had been expressly stipulated in the instrument; as, for instance, if A. buys of

B. a bale of goods by sample, at a given price, and the contract in those words is reduced to writing, and signed by the parties; it is an incident to this contract, that the bulk of the bale shall correspond with the sample, and if it does not, the law implies an obligation on the part of B. to pay A. such damages as he may sustain by reason of any defect in the quality of the goods as compared with the sample; and the contract between A. and B. has to be construed precisely as if these incidents or implications had been incorporated in it. So, if one sells another any chattel, for a given sum, and the contract is reduced to writing, but nothing is said about warranty; the law implies a warranty on the part of the vendor, of his right to sell, and repels it, in the absence of fraud, as respects the quality of the thing sold. And if these incidents, or legal implications, were incorporated in the contract, it would still remain the same.

Construing this contract in this manner, we have a key to the solution of nearly every question presented upon this record.

The contract on its face is perfect. The lessor, in consideration of a certain sum of money, and certain things to be done, rents to the lessees certain premises described, for a certain specified term. No ingredient of the contract is wanting. It must be held then to be the actual contract between the parties.

Applying the principles that we have thus laid down, in the construction of this contract, and the rules of pleading to the demurrers to the first, second and fourth counts of the plaintiff's declaration, it will readily be perceived that the court erred in sustaining them. In each of these counts, the plaintiff sets out the written instrument, alleges the performance of his part of the agreement, and the non-payment of the rent. In the first count, after alleging the non-payment of the rent, he alleges that the buildings were destroyed by fire on the 10th of April, 1850, and that, in consequence of such destruction, they were not re-delivered to him, but were wholly lost, and that they were worth two thousand dollars; and then adds a *super se assumpsit*. He alleges no carelessness, or neglect or omission of duty, except that the buildings were not delivered. What, then, is the legal liability on the

Nave v. Berry et al.

face of this count? The non-payment of the rent, and nothing more. But conceding this, the count is not bad; because all that is found in it, after the allegation of the non-payment of the rent, must be regarded as surplusage. It is insisted, however, that there is a misjoinder of breaches, and that the count is bad for that reason. This objection is not well taken, because there is no breach at all alleged, except that of the non-payment of the rent. The allegations which follow this, show upon their face that there is no legal liability arising from them; at best, they can be regarded as nothing more than a statement of the plantiff's misfortune. This, however, cannot vitiate the part of the count that is good. The rule in pleading, as we understand it, is, that where a contract contains several stipulations, the pleader may in each count assign as many breaches as he pleases; but each breach must be upon a distinct stipulation in the contract. On the other hand, he cannot assign two breaches in the same count, of one and the same stipulation, because that would be objectionable for duplicity. 1 Chit. Pl. 336. In the count under consideration, if the plaintiff, in addition to the non-payment of the rent, had shown another stipulation of the contract broken on the part of the defendants, as, for instance, the non-payment of the taxes, the count would still have been good.

The same reasoning applies to the second and fourth counts, and, except as to one aspect of the second count, we do not deem it important to swell this opinion by commenting more particularly upon them. In the second count, after setting out and making profert of the writing, the pleader goes on to allege, that there was a stipulation between the plaintiff and defendants that the premises should be occupied by Berry, one of the defendants; and then further alleges a breach of this stipulation, in the assignment of the lease to Graham and putting him in possession. The written instrument set out contains no such stipulation, and we have already seen that this stipulation alleged is directly repugnant to one of the incidents to the written agreement, and is demurrable for that cause. But this part of the count may be demurrable, and yet the part which goes for the rent remain good. The proper mode of pleading to a count framed in this manner, is not

26

by demurrer to the whole count, but only to such portion of it as is bad, and pleading to the balance. If two breaches are assigned on the same stipulation, then a demurrer to the whole count would reach it.

In the progress of the trial, as appears by the bill of exceptions, the plaintiff offered to prove by parol evidence that the premises were rented to the defendants, to be occupied by the defendant, Berry, during the term. The defendants objected to the competency of this evidence, and the objection prevailed. It is here insisted that this was competent proof, and that the court erred in excluding it.

We have already stated, that in the construction of written contracts, perfect upon their face, for the purpose of ascertaining whether it is consistent with the writing, its legal implications and incidents should be considered as written out and incorporated in it. If this were done in reference to the contract under consideration, there would then be found in it an express stipulation that the lessees might assign their term to whomsoever they pleased, and that their assignee should have the same right to possess and enjoy that they themselves had. The proof offered by the plaintiff would come directly in conflict with this stipulation, and on well settled principles would be incompetent. There was no error, therefore, in its exclusion by the court.

The first charge given to the jury by the court was, that although the buildings were burned down on the 10th of April, 1850, the defendants were not liable under the contract, unless the jury were satisfied by the proof that there was negligence on the part of said defendants or said Graham. The second charge was, that defendants had the right to underlet to said Graham the said premises, to be occupied by him and his school; and if the jury believed that said Graham used proper care and diligence in guarding against fire, said defendants were not liable.

Both of these charges have been entirely covered by what we have already said, except in one point of view. Conceding the right of the defendants to underlet, had they the right to underlet to Graham for the purpose of keeping there a young ladies' school or seminary? The lessees, under their contract, undoubtedly had the right to underlet to any

one for the same uses and purposes to which they themselves could have applied the premises. The question, then resolves itself into this: Had the defendants or the defendant, Berry, the right, under this contract, to have opened a young ladies' school or seminary on the premises? From what we are bound to know judicially of a school, and from what knowledge we derive from the proof in this cause, we cannot say that such an employment of the premises was not within the scope of the contract. If the buildings had been used for pyrotechnical experiments, or if they had been put to a use which necessarily accumulated upon them large quantities of highly inflammable substances, we might then hold, that their employment for such purposes was a breach of the contract on the part of the defendants. But we see nothing in the nature of a school for young ladies that should have forbidden the defendants, or either of them, from employing the premises in this manner; and if they could have thus employed them, they could confer the same right by assignment upon another. There was no error, therefore, in these charges.

The three charges asked by the plaintiff assume a fact as proved, when there was no evidence before the jury tending to prove it, and which, after having introduced his written instrument, it was incompetent for him to have proved by any parol evidence whatever. These charges all start with the assumption, that the jury believe that the defendants stipulated that Berry, or some other one of them, was himself to occupy the premises leased during the term. We have already shown that parol evidence tending to prove this fact was incompetent, and correctly excluded from the jury. The charges asked, then, were thus far abstract, and for that reason correctly refused. Even if parol evidence had been permitted to go to the jury tending to prove this fact, it would have been the duty of the court to refuse the charges, because it could not, and ought not, to have allowed at any stage of the cause, without the consent of the opposite party, that a written instrument should have been controlled or varied by parol proof.

For the error that intervened in sustaining the demurrers to the first, second and fourth counts in the plaintiff's declar-

ation, the judgment of the court below is reversed, and the cause remanded.