MOSES TOWNSEND v. D. H. L. HILL.

Where a slave is hired for a year, and without any fault on the part of the hirer, or failure of proper care and medical aid, dies before the expiration of the time, the hirer is entitled to a corresponding abatement of the hire.

Error from Colorado.   Tried below before the Hon. James H. Bell.

Suit by defendant in error against plaintiff in error on a promissory note, given for the hire of a slave for the year 1854.   The note was given at the time of the hiring, and the slave died within two weeks after the hiring, without any fault on the part of the defendant.   The slave received proper attention and medical aid.   He was not sick when he went into defendant's possession under the contract.   On these facts, a jury being waived, judgment was rendered for the plaintiff for the full amount of the note.

G. W. Smith, for plaintiff in error, cited George v. Elliott, 2 Hen. & Munf. R. 5, and the authorities there referred to.

*J. H. Robson*, for defendant in error.   The only decision I have been able to find which favors the appellants, is the case of George v. Elliott, 2 Hen. & Munf. (Virginia) R. 5.   The reasoning by which the conclusion is arrived at in that case, is that the death of the negro was caused by the act of God, and that it would be unreasonable to allow the owner hire for the dead negro.   The fallacy of the opinion becomes apparent when we consider that all contracts are entered into with knowledge on the part of both the contracting parties that the acts of God are of frequent occurrence ; that human life is uncertain, and that accidents, mishaps, and misfortunes, which no human power can control, have occurred, and will continue to occur, as long as the world exists.

The hirer of the negro for a given time is the owner of the slave during that time.   (McGee v. Currie, 4 Tex. R. 222.)

If then the negro dies during the term of hiring, the hirer, or tenant as he is called in the Virginia decision referred to, only loses his own property, and therefore it is nothing but proper and fair that he should bear the loss.   In the Virginia decision the Court says, " The act of God falls on the owner, on whom it must have fallen if the slave had not been hired."   I apprehend this is an assumption which is not warranted by any ascertained fact in human philosophy ; for granting, for argument's sake, that the property in the negro remains in the original owner during the term of hiring, how could the Judge delivering the opinion in the case referred to, determine that if the negro had not been hired, he would have died in the hands of the owner.   This would depend entirely on the truth of the doctrine of predestination, and it would certainly be unsafe to base a rule of law upon the uncertainty, not to say absurdity of such a doctrine.   That the negro would have died if he had not been hired, and had remained with the original owner, is a matter which the Superior Court of Chancery of the State of Virginia, were no more capable of deciding than the rude uncultivated country clown, and still the only

plausibility attached to the view of the case entertained by that Court, arises from the assumed truth of that proposition.

The absence of any condition in the bond, in the Virginia case, and note in this case, for apportionment of the contract in case of the death of the slave, is in itself strong evidence that the risk formed a part of the essence of the contract in both cases, and attached itself to the hirer ; and there is no reason why the obligor in the one case, and the makers of the note in the other, should not be compelled to fulfil their contract.

In the case of Lennard v. Boynton, 11 Georgia R. 109, &c., the opposite doctrine from that maintained in Virginia is laid down, and is so clearly and logically stated, as to bring conviction to the mind of the reader, of the soundness of the rule which is there established.

The rule laid down in 11 Georgia R. is reiterated and affirmed in 14 Georgia R. 259.   The Court is also referred to the following authorities in support of the rule for which I contend :  Harman v. Fleming, 25 Miss. 135 ;  Harrison v. Murrell, 5 Monr. 360 ; Ragland v. Cross, 2 Car. Law R. 121 ; 4 McCord's S. C. R. 182.

In Cook's Tennessee Reports (page not recollected) this rule is also adopted in a case precisely like the present.

WHEELER, J.   On the question whether the hirer of a slave for a year is entitled to an abatement of the price, in case of the death of the slave before the expiration of the term, the authorities are divided.   Those which follow the civil law, without exception, doubtless, maintain the affirmative.   But in the Common Law States the decisions are not uniform. The weight of authority there, however, will be found, I think, to be in favor of the more equitable rule of the civil law. (George v. Elliott, 2 Hen. & Munf. R. 5 ; 2 Bailey's R. 424 ; 9 Mis. R. 867.)   Where a different rule has obtained, it has

been rested, in a great degree, on a supposed analogy to the Common Law doctrine respecting the obligation of the tenant for the payment of the rent of demised premises. (Lennard v. Boynton, 11 Ga. R. 109.) It might be a question whether the analogy applies with all the force which has been claimed for it ; or, admitting the analogy, whether there is such reason and justice in the rule as to commend its extension and application by analogy, to other cases. And it is yet to be seen whether that severe rule of the Common Law will prevail in this State ; or whether our Courts will not feel at liberty to follow the example of those Courts which have departed from it and followed the rule of the Civil Law. (4 McCord, 447.)

When it is considered that the equity as well as the law of the case is to be administered, there will appear to be but little force in the argument, that the hirer should be bound for the full term, at all events, merely because that is the letter of the bond.

The argument of public policy, drawn from considerations of humanity, is certainly entitled to great weight. But it may admit of question on which side the argument lies : whether the humane treatment of slaves will not be best promoted by increasing the motive on the part of the owner to hire the slave to none but a humane master. I apprehend it is with the owners, rather than the hirer of slaves, that the motive will be found to operate most powerfully and effectually to provide against their inhuman and cruel treatment. So far as motives of self-interest may be supposed to operate upon the hirer, to observe humane treatment toward a hired slave, it ought, it would seem, to be sufficient, that he will be responsible to the owner for both the value and hire in case of loss occasioned by his inhumane treatment. This responsibility he will incur. (Robinson v. Varnell, 16 Tex. R. 382.) But the case we are considering is one where the loss of the slave has arisen from the act of God, without any fault in the hirer. And in such a case, we think there is much reason in holding,

that the loss should fall on the owner, on whom, as was observed by Chancellor Taylor, it must have fallen if the slave had not been hired. (George v. Elliott, 2 Hen. & Munf. 5.) The observations of the Supreme Court of North Carolina in Benthen v. McLennen are to the same effect. "The act of " God does injury to no man. When a thing ceases to be, be- " cause of a dispensation of Providence, there may be loss, but " there is no injury ; and this loss falls upon the owner of the " property. We know of no instance where the law interferes " to throw the loss from him, upon others, where it is not at- " tributable to culpable act or neglect. Then it is not a mere " loss but an injury ; and the wrong-doer is justly answerable " for it." (1 Iredell, L. R. 523 ; and see Porter v. Miller, 7 Tex. R. 468.)

It is said the hirer should have stipulated in the contract against loss from such a contingency. And doubtless he would have so stipulated if he had thought it likely to happen. No doubt the owner would have readily assented to it, if proposed at the time. But surely the failure to stipulate against the consequences of an event which neither of the parties anticipated, ought not to preclude the hirer from having the contract apportioned, according to the dictates of natural justice, and as it doubtless would have been apportioned by the natural consent of the parties, had they anticipated the happening of the event as probable. It is the fact that it was not within their contemplation, at the time of making the contract, and therefore not provided for, that demands of the Court an apportionment of the contract, in order to do justice between the parties, according to the principles which would doubtless have guided them, had they had in contemplation the case which the Court is called upon to decide.

Without deeming a more extended discussion of the question necessary, it may suffice to say, in such a case, where the loss was confessedly by the act of Providence, without fault in the hirer, we concur in opinion with those Courts, which have held

what must be admitted to be the milder and more equitable doctrine, that the hirer shall be entitled to an abatement of the price, leaving the loss to rest upon the owner of the slave. It is not only more equitable, but is more in harmony with the doctrine of the apportionment of contracts, which has been maintained by this Court in analogous cases. (Meade v. Rutledge, 11 Tex. R. 44 ; Hassell v. Nutt, 14 Id. 260 ; 10 Tex. R. 81.) It is not perceived that there is any consideration of justice or public policy, which demands the adoption of a different rule. We are of opinion, therefore, that the Court erred in refusing to admit of an abatement of the price, on account of the death of the negro before the expiration of the term of hiring. The judgment is therefore reversed ; and the cause having been submitted to the Court upon the evidence, waiving a jury, the judgment will be here rendered which the Court below ought to have rendered.

Reversed and reformed.