MILLER, BILLUPS & CO. v. MORRIS, RAGSDALE & SIMPSON.

(Case No. 1081.)

1. PRACTICE IN DISTRICT COURT.— When an amended pleading is filed, of which opposing counsel has notice, and after having had time to examine the same, they announce ready for trial, the supreme court will not on appeal regard a refusal of the district judge to permit a withdrawal of the announcement of ready for trial to allow time to prepare further pleading, as being such an abuse of discretion as to authorize a reversal.

2. COVENANT IN LEASE.— A clause in a lease by which the lessees agree "to give peaceable possession of the said shops, oxen, wagon, houses, mill and gin, in as good condition as when delivered to them; that is to say, in good running order, ordinary wear and tear excepted," does not, in the absence of negligence, bind the lessee to rebuild in case of casual destruction of the property, by fire, or make them responsible in damages for the loss.

APPEAL from Anderson. Tried below before the Hon. Peyton F. Edwards.

Suit was brought by the appellants against the appellees, to recover from them the alleged value of houses and machinery at Nechesville, Texas, known as the Miller, Billups & Co. gin factory and mill, situated on the town lots of the appellants, in the town of Nechesville.

Appellants averred in their petition, that, as surviving partners of Messrs. Miller, Billups & Co., they did on the 12th day of April, 1878, enter into a written contract with the appellees to lease them the property, in words and characters as follows:

"This instrument of lease, made the 12th day of April, 1878, witnesseth that R. J. L. Morris, T. S. Ragsdale and L. V. Simpson, of Nechesville, county of Anderson and state of Texas, hath rented from Miller, Billups & Co., of Nechesville, aforesaid, one-fourth capacity of their shops, situated in said town of Nechesville, one yoke of oxen, one wagon and three dwelling houses, until the 1st day of January, 1879; for which they agree to pay to the said Miller, Billups & Co. the sum of thirty-three and 33-100 dollars per month, due and payable at the expiration of each three months, at Nechesville. Also, their grist mill and cotton gin, for the use of which for the length of time before specified, they (Morris, Ragsdale & Simpson) agree to pay to Miller, Billups & Co. thirty-five per cent. of all toll corn and cotton realized from same at the expiration of above specified time. The said Morris, Ragsdale & Simpson agree to give the said Miller, Billups & Co. peaceable possession of the said shops, oxen, wagon, houses, mill and gin in as good condition as when delivered to them; that is to say, in good running order, ordinary wear and tear excepted. In testimony of which we sign, seal and deliver this instrument in the presence of W. W. Owen.

(Signed)                    "R. J. L. MORRIS,
                            "T. S. RAGSDALE,
                            "L. V. SIMPSON,
                            "MILLER, BILLUPS & Co."

Appellants averred that, by virtue of said contract of lease, said Miller, Billups & Co. obligated themselves to deliver to appellees the full, complete and exclusive possession and control of the lots, shops, oxen, wagon, dwelling houses, mill and gin houses, tools, apparatus, machinery, from the 12th day of April, 1878, until the 1st day of January, 1879; that at the expiration of said lease they were bound to give Miller, Billups & Co. possession of said property in as good condition as when delivered to them; that is to say, in good running order, ordinary wear and tear excepted; thereby obligating themselves to rebuild and replace said shops, houses, tools and apparatus, machinery, etc., in case the same was destroyed, or to pay the value thereof, on the 1st day of January, 1879. That whilst said property was in the possession of appellees, on the 2d day of November, 1878, the appellees allowed the shops, houses and tools of Miller, Billups & Co. to be destroyed by fire, and the machinery to be greatly damaged, the ownership of the property being still in Miller, Billups & Co. That appellees refused to replace or rebuild said property, or to pay the value thereof, on the 1st day of January, 1879. Appellants included in their petition a second count, wherein they charged that appellees, on the 2d day of November, 1878, by their gross negligence and carelessness, permitted the property, whilst in their possession, to be destroyed and damaged by fire, and prayed for the value of property destroyed by fire, and for damages to the property injured by the fire.

Appellees in their amended original answer pleaded:

*First,* to the court, a general exception, and special exceptions to the petition of appellants, all of which were overruled.

*Second,* a general denial.

*Fourth,* a special plea in answer to appellants' second count in his petition, averring that if plaintiffs' gin factory was destroyed by fire on the 2d day of November,

1878, that the fire did not occur by reason of the negligence of appellees, and that it grew out of the defective construction and material of which the gin shop, sheds and factory were constructed by plaintiffs; that the fire was the result of the use, natural wear and tear of the gin factory; that appellees took the same care in the preservation of the property that a prudent man does ordinarily of his own property, and that appellees had property of their own in the factory, at the time of its destruction, of the value of $2,000, which was totally destroyed. That the property was destroyed by an accidental fire, and said accidental fire was the natural and immediate result of the wear and tear of the machinery in their ordinary and common use. That at the time of the destruction of the property the machinery was stationary, and had been so for some time, and was not being used by them at all.

*Sixth*, a special plea, that if appellees ever did enter into a contract with the appellants to repair or rebuild the gin factory, machinery, etc. (and this they denied), that the covenant run with the land to which the gin factory, etc., was affixed; and that at the date of filing suit by appellants, the appellants were not the owners of the land to which the gin factory, etc., were affixed, either in fee, for years or for life.

The appellants' petition at the fall term of the court, 1880, was held insufficient, and they obtained leave to file an amended original petition at that term of the court. The amended petition was not filed until the day the case was regularly called for trial, and on the same day appellees filed an amended original answer, which the attorney for appellants had time to examine, and afterwards announced ready for trial.

The issues of fact were joined, and the court submitted to the jury the following special issues:

First issue: Did the defendants, Morris, Ragsdale &

Simpson, lease the property named in the petition from plaintiffs; and if so, did said lease pass to the exclusive control and possession of the whole of said property, mills, engines, machinery and houses?

Second issue: Was said property, or any part thereof, destroyed or damaged by fire while in the possession of defendants, under said lease?

Third issue: What was the value at the time of the burning, of the property, if any, and the damage done to that, if any, damaged by the fire and not destroyed?

Fourth issue: Was the fire caused by the culpable negligence of the defendants? . . .

To the first issue the jury responded that the defendants had one-fourth capacity of the gin shops and exclusive control of all other property named in the lease.

To the second issue the jury responded that the property was destroyed by fire while in possession of the defendants.

To the third issue the jury responded that the property at the time of the fire was of the value of $3,450, and the damage done to property injured by fire and not destroyed was $300. That total amount of property damaged and destroyed while in the exclusive control and possession of the defendants by virtue of the lease was $2,150.

To the fourth issue the jury responded that they found that the fire was not caused by the negligence of the defendants, and that they are not liable for any damage caused by said fire. . . .

Upon the said findings the court rendered a judgment for the appellees.

*T. J. Williams* and *Posey, Bussey & Hennisberger*, for appellants.

I. . . . Under seventh assignment. The written instrument, or lease, here sued on, after describing the

property leased and the terms, concludes with the following covenant: " At the expiration of the above specified time, the said Morris, Ragsdale & Simpson agree to give the said Miller, Billups & Co. peaceable possession of the said shops, oxen, houses, wagon, mill and gin in as good condition as when delivered to them; that is to say, in good running order, ordinary wear and tear excepted;" which covenant or agreement bound and obligated defendants to replace and rebuild said property, if destroyed, or to pay plaintiffs the value thereof. See 2 Black, 281 and note; 3 id., 228 and note; 1 Washb. on Real Property, pp. 505, 16 and 535; 5 et seq.; Sedg. on Dam., 229; 1 Parsons on Contracts, 503; 2 Parsons on Contracts, 672 and note; 3 id., 232; Wood's Landlord and Tenant, 373.

II. The covenant in the written lease, as set out in the last proposition, bound defendants to deliver the whole of said property to plaintiffs at the expiration of the lease, and not a portion thereof, and made defendants liable for the whole in case of its destruction, and should have been so construed by the court.

*Greenwood & Gooch,* for appellees.

I. Where a tenant covenants to surrender the premises at the expiration of the lease in the same condition they are in at the date of the lease, natural wear and tear excepted, but without any express covenant to repair or rebuild, he is not bound, in case the buildings are destroyed by fire during the continuance of the term, to put up new buildings in the place of those destroyed. Taylor's Landlord and Tenant, sec. 357; Howeth v. Anderson, 25 Tex., 571; Warner v. Hutchins, 5 Barb., 666; Margatt v. Hansbarger, 8 Leigh (Va.), 532; Wood's Landlord and Tenant, p. 607.

BONNER, ASSOCIATE JUSTICE.— Appellants pretermit in their brief the second and fifth assigned errors.

I. The first alleged error relates to the refusal of the court below to allow appellants time to prepare a supplemental petition and to withdraw their announcement of readiness for trial. Under the facts as stated in the bills of exception, it does not appear that appellants were in any way prejudiced by the refusal of the court to grant their requests, or that, under the circumstances, there was such abuse of the discretion of the court as should demand a reversal of the judgment on that ground.

II. The third alleged error objects to the action of the court below in permitting witness, Simpson, to state the general acts of the defendants to protect the property from fire from the time they took possession until its destruction; and the fourth assigned error objects to the evidence of this witness that the defendants also lost property by the fire.

This testimony was admissible, under the issue of negligence, as a circumstance tending to prove the exercise of care upon the part of the defendants for the preservation of the property.

III. The seventh assigned error, and which presents the main question in the case, is:

"That the court erred in construing the instrument sued on as containing no covenant or agreement on the part of the defendants to replace and rebuild said property, and to restore the same to plaintiffs in good running order at the expiration of said lease in case it was destroyed, or, in default thereof, to pay plaintiffs the value thereof and damages thereto; and in ruling the law to be, and in instructing the jury, that the suit was brought by the plaintiffs to recover damages of the defendants for culpable negligence of defendants in the destruction of said property, when in fact said suit was brought as well to recover on the covenant and agreement of defendants to replace and to rebuild, and to deliver said property to plaintiffs in good running order."

We have no statute of waste in this state, and under the common law as adopted by us, the defendants below, under the facts as found by the jury, would not be liable to rebuild, unless the covenant in the lease is equivalent to an express agreement to that effect. 2 Minor's Inst. (2d ed.), 546; Warner v. Hitchins, 5 Barb., 666.

The covenant is, that "the said Morris, Ragsdale & Simpson agree to give the said Miller, Billups & Co. peaceable possession of the said shops, oxen, wagon, houses, mill and gin in as good condition as when delivered to them; that is to say, in good running order, ordinary wear and tear excepted."

The importance of the question will justify a brief review of some of the leading authorities upon this subject, to aid us in arriving at a proper construction of this covenant.

In Nave v. Berry, 22 Ala., 391, the distinction was recognized and adopted, between an obligation "to repair and deliver up," and one "to deliver up," that whilst the former binds the obligor to rebuild in case of loss by fire during the term (Phillips v. Stevens, 16 Mass., 238), the latter is construed to mean simply an obligation against holding over; and if the buildings are burned or destroyed without the fault of the lessee, he is not bound to rebuild or pay for the improvements so destroyed.

In Maggart v. Hansbarger, 8 Leigh, 536, the covenant was "to return the said property with all its appurtenances." The property was destroyed by fire. Held, that this was not a covenant to rebuild or to deliver the demised premises in good order, but simply a covenant or agreement to return the property with its appurtenances. A distinction was drawn between that case and Ross v. Overton, 3 Call, 309; Phillips v. Stevens, 16 Mass., 238; Bullock v. Dommit, 6 Tenn., 650; Digly v. Atkinson, 4 Camp., 275, and others of like character, in which there was an express covenant to repair. The learned judge

in delivering the opinion said that, "even when there was such express covenants to repair, it has seemed to some a strained and doubtful construction to extend them to the case of rebuilding."

In Wainscott v. Silvers, 13 Ind., 500, the rule is stated that the tenant is not responsible for buildings accidentally burned down during his tenancy, unless he has expressly covenanted or agreed to repair. That it is not sufficient to charge him that he agreed or covenanted to surrender the premises at the end of his term, in the same repair or condition that they were in at the time of the contract.

In Warner v. Hitchins, the covenant was to surrender up the possession of the premises, at the expiration of the lease, in the same condition they were in at the date of the lease, natural wear and tear excepted. The building was destroyed by fire. In an elaborate opinion the leading cases in both England and this country were reviewed, and it was held that the covenant did not amount to one to repair, and that the tenants were not bound to rebuild. 5 Barb., 666; McIntosh v. McLawn, 49 Barb., 554.

In Howeth v. Anderson, 25 Tex., 557, the covenant was to redeliver said mills, etc., to said Anderson, in as good order as they received them, excepting usual wear and tear and unavoidable accidents. In the opinion, Wheeler, C. J., cites with high commendation the above case of Warner v. Hitchins (5 Barb., 666), and also quotes from Mr. Taylor's work on Landlord and Tenant (§ 357) as follows: . . . "Where he (the lessee) covenants to surrender the premises at the expiration of the lease, in the same condition they are in at the date of the lease, natural wear and tear excepted, but without any covenant to repair or rebuild, he is not bound, in case the buildings are destroyed by fire during the continuance of the term, to put up new buildings in the place of those destroyed."

In that case the learned chief justice reached the conclusion, that, according to the authorities cited, it was clear that the defendants were not liable for the accidental loss of the premises by fire; that such lease was not like the contract of a carrier, nor governed in its construction to the same extent by considerations of public policy; that the construction should be given which would most accord with the presumed intention of the parties; and that from the terms and subject-matter of the contract, it was not reasonable or fair to conclude that the parties contemplated that the lessees were to become insurers against those casualties which ordinary prudence and foresight could not have guarded. 25 Tex., 572–3; Trigg v. Hally, 4 Humph., 493; Maggart v. Hansbarger, 8 Leigh, 537; Graham v. Swearinger, 9 Yerg., 276; Harris v. Nicholas, 4 Mum., 489; Townsend v. Hill, 18 Tex., 426.

Levey v. Dyess, 51 Miss., 501, is a case almost identical with the present. That covenant was, that, "at the expiration of twelve months, the lessees were to redeliver to the lessor the steam sawmill, together with said implements and tenements, and two log carts; the said steam sawmill in good running order, except the usual wear and tear, and the log carts, implements and tenements without damage, except the running, wear and usage."

The breach assigned was non-delivery at the expiration of the lease. To which the defendants pleaded the casual destruction of the property by fire, without their act, fault or negligence. To this plea a demurrer was sustained. After an elaborate and learned opinion by Simrall, J., in which many of the leading cases were reviewed, the court deduced from the authorities the following propositions:

1. That the lessee was not responsible to the lessor for the accidental casual destruction by fire of the property demised, unless by his covenants he has made himself so.

2. In construing the covenants, the cardinal rule is the intention of the parties; and the courts will not ex-

tend or enlarge the obligations of the lessee beyond the plain meaning and intention of the parties. If there is not an express stipulation to restore edifices and structures destroyed by casualty, or some covenant which is equivalent thereto, such as a covenant "to uphold and repair," or "to repair," then the loss must fall upon the reversioner. . . .

3. A covenant to redeliver or restore to the lessor, in the same plight and condition, usual wear and tear excepted (or other words of like import), does not bind the covenantor to rebuild in case of casual destruction by fire, or impose the burden of the loss on him.

4. The contemplation of the parties to such a covenant, applied to a house, sawmill, machinery and appliances, is that the lessee will take ordinary reasonable care of the property, according to its nature, and that he will surrender possession when his right to enjoy has expired. That it is not within the intendment and according to general understanding, that such stipulation imposes on the tenant the responsibility of insurer. If that greater risk is assumed, it must be clearly and explicitly set forth in the contract. . . .

We indorse these propositions as sound both on principle and authority.

Construed in the light of the above authorities, the covenant under consideration did not bind the defendants to rebuild in case of casual destruction of the property by fire, or impose the burden of the loss on them, the jury having found that the fire was not occasioned by their negligence. Hence it would follow that the seventh assigned error is not well taken.

This view of the case dispenses with the further consideration of the other errors assigned.

JUDGMENT AFFIRMED.

[Opinion delivered October 14, 1881.]