

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-14-00180-CV**

RAY L. FOSTER                                    APPELLANT

V.

SAM LECOMTE                                      APPELLEE

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2012-70577-431

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

Because I believe the trial court erred by granting appellee Sam LeComte summary judgment based on the unambiguous language of the lease, I must dissent.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

As the majority opinion states, this appeal concerns LeComte's alleged breach of a commercial lease agreement for a hangar owned by appellant Ray L. Foster located at a municipal airport. The lease contained the following covenants:

> 1. A repair covenant: "Lessee shall maintain and keep the leased premises in good repair and condition."

> 2. A surrender covenant: "Lessee agrees to surrender the premises to Lessor at the end of the lease term, if the lease is not renewed, in the same condition as when Lessee took possession, allowing for reasonable use and wear and damages by acts of God, including fire and storms."

During the lease term, the hangar was damaged by a fire. No party disputes that the fire was caused by an electrical failure in a motor home that LeComte did not own but had allowed to be stored in the hangar. Foster filed suit against LeComte for breach of the lease. Although Foster alleged that LeComte violated four distinct lease provisions,[2] it is undisputed that the only claim he raised was breach of contract. Foster and LeComte filed competing motions for summary judgment, with LeComte filing a hybrid traditional and no-evidence motion and Foster filing a traditional motion, arguing that their respective interpretations of

---

[2]The four covenants were (1) the surrender covenant; (2) the covenant that LeComte would "save, hold harmless and indemnify" Foster; (3) the covenant that LeComte would "not commit waste on the premises"; and (4) the covenant that LeComte would keep the hangar free of flammable liquids and products.

the lease based on largely undisputed facts mandated judgment as a matter of law.

## II. LEGAL PRINCIPLES

### A. SUMMARY-JUDGMENT STANDARD OF REVIEW

Foster now challenges the trial court's grant of LeComte's hybrid summary-judgment motion, which we are to review de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The majority opinion fails to recite our summary-judgment standard of review or address the effects on that standard caused by the hybrid nature of LeComte's motion and the fact that LeComte and Foster filed competing motions. Such a recitation is necessary because the standard and scope of review usually dictate the appellate result. *See, e.g.*, W. Wendell Hall et al., *Hall's Standards of Review in Texas*, 42 St. Mary's L.J. 3, 13 (2010) ("[T]he appropriate standard of review and scope of review generally determine the outcome of an appeal . . . .").

Although the burdens of proof vary for traditional and no-evidence motions, LeComte's motion was a hybrid motion and both LeComte and Foster brought forth summary-judgment evidence. *See Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *see also* Tex. R. Civ. P. 166a. Therefore, the differing burdens are immaterial, and the ultimate issue is whether a fact issue exists, i.e., whether more than a scintilla of probative evidence is present on an issue. *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012); *see Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 862 (Tex. 1993). Finally, when a trial court grants one

3

summary-judgment motion and denies the other, we review the summary-judgment evidence presented by both sides and determine all questions properly presented. *See Mid–Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 153–54 (Tex. 2010); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In doing so, we first review the order granting summary judgment, and if erroneous, then review the trial court's denial of the competing motion. *Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 443 (Tex. App.—Waco 2012, pet. denied).

To prevail on his breach-of-contract claim, Foster must show (1) the existence of a valid contract, (2) that he performed or tendered performance, (3) that LeComte breached the contract, and (4) that Foster suffered damages as a result of LeComte's breach. *See Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). By granting LeComte's hybrid motion for summary judgment, the trial court implicitly concluded that LeComte had not breached at least one of the four lease provisions alleged by Foster. On appeal, Foster argues that the undisputed evidence showed as a matter of law that LeComte breached the surrender covenant. Foster does not argue on appeal that LeComte breached the other three lease provisions Foster raised in the trial court supporting his

breach-of-contract claim.[3] Normally, the failure to specifically challenge each ground upon which summary judgment could have been granted is fatal to a summary-judgment appeal. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). However, LeComte's breach of any one provision as a matter of law would render summary judgment in favor of LeComte in error. Further, LeComte moved for summary judgment on the basis that the evidence showed he did not breach the lease as a matter of law—the third element of Foster's claim—which Foster specifically challenges. *Cf. Worldwide Asset Purchasing, L.L.C. v. Rent-A-Ctr. E., Inc.*, 290 S.W.3d 554, 561–65 (Tex. App.—Dallas 2009, no pet.) (analyzing each contractual provision raised by plaintiff as establishing breach of contract in review of order granting summary judgment in favor of defendant on plaintiff's breach-of-contract claim).

## B. CONTRACT INTERPRETATION

When interpreting a contract, including a lease, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless. *See NP Anderson Cotton Exch., L.P. v. Potter*, 230 S.W.3d 457, 463 (Tex. App.—Fort Worth 2007, no pet.); *accord Weingarten Realty Investors v. Albertson's, Inc.*, 66 F. Supp. 2d 825, 838–39 (S.D. Tex. 1999), *aff'd*, 234 F.3d 28 (5th Cir. 2000). In other words, a reviewing

---

[3]In other words, Foster waives on appeal his trial-court arguments that LeComte breached the indemnification, the no-waste, and the flammable-liquid covenants.

5

court is to consider the entire writing and attempt to harmonize and give effect to all provisions in the contract by analyzing the provisions with reference to the whole agreement. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We presume that the parties to a contract intended every clause to have some effect. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). If contract language can be given a certain or definite meaning, then it is not ambiguous. *See, e.g.*, *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). The interpretation of an unambiguous contract is reviewed de novo. *See, e.g.*, *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999).

If a court is unable to harmonize the provisions and give effect to all of a contract's clauses, the contract is susceptible to more than one reasonable interpretation and is ambiguous. *D Design Holdings, L.P. v. MMP Corp.*, 339 S.W.3d 195, 201 (Tex. App.—Dallas 2011, no pet.). When a contract is ambiguous, granting summary judgment based on the contract is improper. *Coker*, 650 S.W.2d at 394. Whether a contract is unambiguous or ambiguous is a question of law that is reviewed de novo. *See Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009).

### III. APPLICATION

Again, Foster argues on appeal that LeComte breached the lease as a matter of law by surrendering the hangar with fire damage, rendering the trial

6

court's summary-judgment rulings in error, based on two covenants in the lease: the repair covenant and the surrender covenant. I disagree with the majority opinion's assertion that Foster fails to recognize on appeal that the surrender covenant includes a qualifying clause—"allowing for reasonable use and wear and damages by acts of God, including fire and storms"—that modifies LeComte's duties upon surrender of the hangar. Foster acknowledges in his brief that the surrender covenant includes this qualifier. His argument is that the surrender covenant and the repair covenant contain no exception that would immunize LeComte from the duty to repair the fire damage before surrender. Foster raised this argument in the trial court in his motion for summary judgment: "Le[C]omte had a duty to maintain and repair the hangar but instead returned a property damaged by fire to Foster. This constitutes a breach of [the surrender covenant] of the Lease Agreement." He further asserted in response to LeComte's hybrid motion that the surrender covenant, which included the act-of-God exception, was "clear, specific and unconditional" and required LeComte to repair the fire damage to the hangar before surrender because the fire was not an act of God or reasonable use and wear.[4] LeComte also asserted in the trial

---

[4]The majority opinion affirms the trial court's summary judgment in part because "Foster does not challenge on appeal LeComte's [argument] that he could not have breached the lease because the fire was an accidental act of God under paragraph 7 of the lease." Because I believe Foster sufficiently challenges the trial court's conclusion that LeComte did not breach the surrender covenant as a matter of law, I would address the merits of Foster's argument arising under the surrender covenant.

7

court and continues to assert on appeal that the surrender covenant and the repair covenant "should be construed together" in determining whether he breached the surrender covenant. *See, e.g.*, *Fisher v. Temco Aircraft Corp.*, 324 SW.2d 571, 575–76 (Tex. Civ. App.—Texarkana 1959, no writ) (holding repair covenant and surrender covenant must be construed in context of entire lease).

A general and unqualified repair covenant, as is included in LeComte's lease, usually imposes on the lessee a duty to make ordinary repairs. 49 Am. Jur. 2d *Landlord & Tenant* § 704 (2015). But LeComte's general repair covenant is not an isolated duty; the surrender covenant also applies to LeComte's duties as a tenant. *See* Jerald M. Goodman et al., *The Rodney Dangerfield Clauses: Ten Lease Provisions That Get No Respect*, 24 Prob. & Prop. 47, 49 (2010) ("When surrender provisions are litigated, a court will likely interpret the surrender provision in the context of the lease as a whole.") In the surrender covenant, LeComte must return the hanger to Foster in the same condition as when received, "allowing for reasonable use and wear and damages by acts of God, including fire and storms." The clause "including fire and storms" directly follows and only modifies "damages by acts of God" under the grammatical rule of the last antecedent.[5] *See Horseshoe Bay Resort, Ltd. v. CRVI CDP Portfolio, LLC*, 415 S.W.3d 370, 382 (Tex. App.—Eastland 2013, no pet.) ("Grammatical

---

[5]The rule of the last antecedent holds that qualifying words, phrases, and clauses are applied only to the immediately preceding words or phrase. *See Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003).

usage is not separate from textual meaning."); *Gen. Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 522 (Tex. App.—Fort Worth 1995, no writ) (op. on reh'g) (recognizing court required to follow rules of grammar in construing contract language); *cf. Fazio v. Cypress/GR Houston I, L.P.*, 403 S.W.3d 390, 404–05 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (en banc op. on reh'g) (using rules of grammar to determine that clause in contractual sentence modified entire sentence). Therefore, a plain reading of the surrender covenant in tandem with the repair covenant reveals that LeComte had a duty to repair the hangar such that the hanger would be returned to Foster at the end of the lease term in reasonably the same condition as received; however, LeComte was not required to repair before surrender any damage caused by reasonable wear and tear or any damage by acts of God, including fire and storms. *See Fisher*, 324 S.W.2d at 576 (holding exception in repair covenant necessarily was an exception to the surrender covenant). In short, a fire that damaged the hangar must be the result of an act of God before it may be included under the clear terms of the exception in the surrender covenant. *See generally B & B Vending Co. v. Carpenter*, 472 S.W.2d 281, 283 (Tex. Civ. App.—Waco 1971, no writ) ("[T]he liability of a lessee will not be enlarged nor extended beyond the clear meaning of the language the parties used in writing covenants in the lease.").

An act of God defies precise, legal definition. The common thread in all attempts to define an act of God, however, is that such an act exclusively involves the forces of nature. *Black's Law Dictionary* 41 (10th ed. 2014). Here,

9

the summary-judgment evidence did not raise a fact issue regarding whether the motor-home fire was caused by a force of nature. LeComte attached a fire investigator's report to his motion for summary judgment that concluded the fire was caused by "the electrical breaker panel located on an interior wall near the rear of the motor home[; t]he fire was electrical in nature." LeComte characterized the cause of the fire to be "an electrical event." The fire was not an act of God as required in the surrender covenant; thus, LeComte had a duty to repair the damage before returning the hangar to Foster. *See Wichita City Lines, Inc. v. Puckett*, 295 S.W.2d 894, 900 (Tex. 1956) (holding, in negligence case, repair covenant that specifically exempted roof damage did not immunize lessee from liability for destruction of premises by fire); *Daugherty v. Glass*, 53 S.W. 705, 705–06 (Austin 1899, no writ) (recognizing lease for steam boiler with general repair covenant obligated lessee to compensate lessor after steam boiler destroyed by explosion); *cf. Miller, Billups & Co. v. Morris, Ragsdale & Simpson*, 55 Tex. 412, 421–22 (1881) (holding lessee not obligated to repair damage to leased property caused by fire because lease did not include a repair covenant); *Howeth v. Anderson*, 25 Tex. 557, 572 (1860) (holding lessee not liable for loss of leased premises by accidental fire because surrender covenant specifically excepted "usual wear and tear and unavoidable accidents" and lease contained no repair covenant); *B & B Vending*, 472 S.W.2d at 282 (holding surrender covenant, which excepted "reasonable wear and tear and damage by fire, tornado or other casualty," not violated after lessee failed to replace stolen air-

10

conditioning unit on leased property); *Fisher*, 324 S.W.2d at 576 (holding lessee had no duty to repair roof because repair covenant only applied to interior and plumbing); *Orr v. Vandygriff*, 251 S.W.2d 573, 575–76 (Tex. Civ. App.—Waco 1952, no writ) (holding repair covenant and surrender covenant not breached by lessee's failure to repair building damaged by accidental fire because lease specifically stated lessee was not required to make any "structural repairs to the roof or main walls of the building"); *Bachrach v. Estefan*, 184 S.W.2d 640, 641–42 (Tex. Civ. App.—San Antonio 1945, no writ) (holding surrender covenant, which excepted "natural wear and tear, damage by fire and elements, or act of God," not breached because no evidence damage was more than ordinary wear and tear).

## IV. CONCLUSION

I would conclude that the trial court erred by granting LeComte summary judgment because there was less than a scintilla of probative evidence presented that the damage to the hangar was excepted from the type of damage that LeComte had the duty to repair before surrender under the unambiguous terms of the lease. Because the trial court erroneously granted LeComte's summary-judgment motion, I would hold that this court must then specifically address whether the trial court erred by denying Foster's summary-judgment motion and LeComte's assertions that genuine issues of material fact regarding Foster's

attorney's fees prevented summary judgment in Foster's favor.[6]  *See Wolfe*, 382 S.W.3d at 443; *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 512 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Because the majority opinion concludes otherwise, I respectfully dissent.

/s/ Lee Gabriel
LEE GABRIEL
JUSTICE

DELIVERED:  July 30, 2015

---

[6]I note that although LeComte asserted that fact issues regarding the amount of Foster's alleged damages prevented summary judgment in his favor, an interlocutory summary judgment may be had "on the issue of liability alone although there is a genuine issue as to amount of damages."  Tex. R. Civ. P. 166a(a); *see* Tex. R. Civ. P. 166a(c).