## No. 8728.

### SHAFFER v. GEORGE.

1. CONTRACTS—*Construed.* The purchaser of the properties of a newspaper publishing company agreed to assume "all current liabilities" of that corporation. He was bound for the rents accruing and to accrue, for which the newspaper company was responsible.

2. LANDLORD AND TENANT—*Covenants Running with the Land.* The covenant to pay the rent, and the covenant to surrender, run with the land, and bind the assignee of the tenant.

3. —— *Abandonment by Tenant,* does not terminate the lease, nor the tenant's liability upon his covenants. He cannot accomplish an eviction by his own act.

4. —— *Assignee of Tenant,* is liable only for the covenants broken while he is in possession.

5. APPEAL AND ERROR—*Party Bound by Position Below.* A party who tries his case, throughout, upon one theory, will not be heard to contend upon a different theory in the court of review.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. M. H. KENNEDY, Mr. L. M. GODDARD, for plaintiff in error.

Messrs. BARTELS, BLOOD & BANCROFT, for defendant in error.

Mr. Justice Scott delivered the opinion of the court.

ON the 10th day of June, 1910, the defendant in error, Herbert George, entered into a written contract of lease with Jared Newell Husted, whereby the said George leased to the said Husted a building and premises at 1735 to 1737 Champa street, in the city of Denver, for the term of one year, with the privilege to Newell, at his option, to extend the period for which said lease was to run an additional five years.

The lease provided that Newell should have the right to assign it to a corporation to be organized for the purpose of publishing a daily newspaper. Thereafter Newell assigned the lease and delivered possession of the premises to The Denver Times Publishing Company. This company secured an extension of the lease, under its terms, for a term of five years from the 10th day of June, 1911. The lease provided for monthly payments as rent of $500, and further, that in case the lessee should occupy the second floor of the building, which might be done upon the lessee securing a vacation thereof by the occupying tenants, the monthly rental in such case should be $650.

On or about the 15th day of January, 1912, the Times Company sold its newspaper property, and assigned the lease, to the Speer Publishing Company. This company acquired the second floor, and thereafter occupied the entire building, and for which it paid the monthly rental of $650, as provided in the lease, and continued to so occupy the building until the date of the removal of the newspaper plant and the abandonment of the premises.

On the 21st day of October, 1913, the plaintiff in error, John C. Shaffer, purchased all the stock and bonds of the Speer Publishing Company. As a part of the consideration for the sale to and purchase by Shaffer of the stock and bonds of the Speer Company, Shaffer agreed to and did assume "all current liabilities" of the Speer Company.

On or about the 25th day of October, 1913, the newspaper property was removed from the premises, and the Speer

Company and Shaffer declined to pay further rent under the lease. George declined to accept the keys to the building or to release the lessees, and did not do so until the 26th day of September, 1914.

This suit is to recover the rent under the terms of the lease, from the date of removal from the building until September 26th, 1914, and for damage to the building under the covenant in the lease to leave in good repair. The lease under the extension was to expire by limitation of time on the 10th day of June, 1916. Verdict and judgment was rendered in favor of the plaintiff in the sum of $10,900.

The covenant in the lease under which the plaintiff claims damages to the building is as follows:

"And the said party of the second part covenants with the said party of the first part that the said second party has received said demised premises in good order and condition, and at the expiration of the time of this lease will yield up the said premises to the said party of the first part in as good order and condition as when the same were entered upon by the said party of the second part, loss by fire, or inevitable accident, or ordinary wear excepted, and also will keep said premises, including all gas pipes, water pipes, electric wires and sewer connections in good repair during this lease at his own expense."

The errors assigned are substantially embraced in objections to a part of the instruction of the court, which reads as follows:

"You will find a verdict for the plaintiff, and against the defendant, John C. Shaffer, in the sum of $7,150 for rent due, and also in such further sum not exceeding $8,000 as you find from the preponderance of the evidence that it would cost on September 26, 1914, to then place the leased premises in as good order and condition as they were in when the lease was executed, to-wit, on June 10, 1910, ordinary wear excepted. In this connection the court instructs you that if you find from the preponderance of the evidence that the plaintiff at or before the time he executed

the lease, or at or before the time he assented to the assignment of the lease by The Denver Times Printing and Publishing Company to The Speer Publishing Company, knew that the premises were to be used for conducting a newspaper or printing and publishing business, then the words 'ordinary wear' as used in the lease mean such ordinary wear as buildings are ordinarily subjected to in the conduct of the newspaper or printing and publishing business; but this does not include the removal or condition to the building of walls or partitions, nor does it include other substantial changes or alterations in the structure itself."

The objections to the direction of the court to find for the plaintiff for the rent are: (a) that the guaranty of the defendant to pay "current liabilities" does not create a liability to pay rent under the terms of the lease, and (b) that the question as to when the lease was terminated should have been submitted to the jury.

' The Speer Company was the assignee of the lease, and admittedly liable upon all covenants therein. Shaffer assumed "all current liabilities" of the Speer Company. The word "current" is defined by the authorities as "running, moving, flowing, passing; passing from one to another, especially, widely circulated, publicly known, general, prevalent, as, the current ideas of the day; now passing; present in its course; as, the current month of the year." 2. Words and Phrases, 1790; 8 Am. and Eng. Enc. Law. 498.

It is quite clear that the monthly payment of its rent under the terms of the lease was a liability present in its course of business, and was therefore a current liability of the Speer Publishing Company. The contract of lease was in existence at the time of the guaranty, and was not a liability to arise in the future, but then existed. *Hart v. Wynne*, 40 S. W. 848. (Texas Civ. App.)

It is the accepted rule of law that covenants to pay rent and to yield up the premises in a required condition are covenants which run with the land, and that an assignee

of a lease who accepts it is liable on these covenants.   Indeed, plaintiff in error cites the well considered statement of the rule from Jones on Landlord and Tenant, Sec. 455, as follows:

"An assignee of a lease is bound by privity of estate to perform the express covenants which run with the land, but in the absence of express agreement on his part, he is liable only on such covenants as run with the land and only during such time as he holds the term.   When the assignee accepts the assignment of a lease, he is charged with knowledge of the covenants therein and takes it *cum onere,* subject to the payment of the rent which shall thereafter become due, and to the performance of the covenants running with the land which, by the terms of the lease, the lessee was bound to perform.   Because of privity of estate he is liable upon covenants maturing and broken while the title is held by him.   The law has been stated to be that 'the assignee is answerable for the rent during his ownership of the term under the assignment, and his liability therefor arises out of the privity of estate, and this, without reference to any obligation assumed by him in the contract of assignment.'   The original lessee is bound by the contract to make the payments.   The assignee is bound by his acceptance of the lease to make good the covenant to pay rent therein contained.   His liability is upon the covenants and arises not from any express assumption or agreement to pay it, which might be contained in the written assignment, but from the privity of estate by reason of his ownership and right to enjoy the benefits of the lease.

The assignee is in privity of estate, but not in privity of contract with the lessor, and is only liable on covenants which run with the land, such as covenants for rent, to pay taxes and to yield up premises in good repair."

To the same effect see 1 Underhill on Landlord and Tenant, Sec. 386, where the reason for the rule is stated to be:

"Any liability the assignee of the lessee may have is only incumbent upon him because of the equitable principle that he who enjoys the benefits of an existing condition of af-

fairs can not shift its duties. After the assignment the assignee has the sole right of possession under the lease, and having this right, he must accept the accompanying duty or duties. The right of possession and the enjoyment of possession impose upon him the obligation to return their equivalent. Hence, he must do for the landlord everything that his assignor had agreed to do as an equivalent of the enjoyment of the premises. This class of covenants which are by a fiction said to run with the land comprise all those which involve the doing of something to or about the land itself. They are very numerous and include almost every conceivable covenant which can be inserted in a lease. It is not necessary where by its nature a covenant runs with the land that it shall contain the word 'assignee' or 'assigns.' "

To sustain the contention of plaintiff in error that the assumption of all current liabilities does not include liability on the lease he cites *State v. County of Marion*, 21 Kan. 419, and *The Matter of Assignment of Henover*, 70 Hun. 56, 23 N. Y. Supp. 1092. These authorities do not, in our opinion, sustain the contention, nor vary the rule as above stated. In the former case it was simply held that the board of county commissioners have no power to appropriate funds raised by taxation to defray current expenses, for the erection of permanent county buildings, and particularly in view of statutes providing specifically for the creation of funds for the construction of permanent county buildings. The latter case involved an assignment for the benefit of creditors, and is not in point.

It is further contended by plaintiff in error that he is not liable on the covenant to yield up the premises in good repair at the expiration of the lease, for the reason that the lease had not expired by the efflux of time, but by expiration on cancellation. This contention can not be sustained either upon principle or authority.

The rule of law in this regard is stated in 2 Underhill on Landlord and Tenant, Sec. 534, to be:

"The question what is meant by the words 'expiration of the term' may arise where the lease is surrendered before the term has expired by the lapse of time. Unquestionably the parties to such a covenant 'by expiration of the term' mean in most cases that no cause of action shall accrue until the end of the full term caused by the natural efflux of time. But a lease may expire in many other ways than by lapse of time, as, for example, by the taking of the premises for public uses, by certain wrongful acts of the tenant, by surrender or eviction. And where the term thus expires, it is as much at an end as if it had expired by the lapse of time. Neither party can thereafter obtain any rights under it, though either may enforce against the other any rights of obligation which may have accrued theretofore. Hence, where a lease is surrendered during the term by the agreement of the parties, a cause of action on a covenant to surrender in good condition at the expiration of the term at once accrues to the lessor, and if the premises are not returned in good condition at the time of the surrender, the lessor may sue at once for damages.

Counsel cite *Reed v. Showhill,* 51 N. J. L. 162, 16 Atl. 679, 33 L. R. A. 683, to the contrary.

If this case can be said to sustain the contention, it is without precedent, and, so far as we are aware, has never been followed. On the contrary, it has been expressly repudiated. *Marshall v. Rugg,* 6 Wyo. 270, 45 Pac. 486, 33 L. R. A. 679, and authorities cited.

The plaintiff in error further contends that the Speer Company had transferred all its interest in the lease to the Denver Publishing Company on October 31, 1913, and had therefore gone out of possession at that time.

There is no such testimony in the record. It is true that the complaint alleged, upon information and belief, that on January 30, 1914, the Speer Company had assigned its interest in the lease to the Denver Publishing Company, an original party to this suit, but this allegation was denied, and there was no proof of such an assignment at any time, and because of this failure of proof, the trial court dis-

missed The Denver Publishing Company as a party defendant. Therefore, so far as it appears from the proof, the Speer Company continued as the assignee of the lease, in legal possession, until the lease was terminated.

The mere abandonment of the premises did not operate to destroy the estate of the Speer Company. There was no evidence tending to show that the owner accepted the surrender of the lease at that time, or until September 26th, 1914.

It was said by this court in *Symes Investment Co. v. Wheelock,* 55 Colo. 459, 136 Pac. 65, that:

"It is fundamental that a tenant can not, by voluntarily surrendering possession of the premises, evict himself. *Letteck v. Holland,* 63 Ill. 335. The renting of other quarters by defendant, notice of vacation on a certain date and vacation of the premises accordingly constituted an abandonment, and entry thereafter by the landlord was not an eviction. *Humiston et al. v. Wheeler,* 175 Ill. 516, 51 N. E. 803. It is essential to even constructive eviction that the conduct of the landlord be more than a mere trespass and such as to effectually deprive the tenant of the use and benefit of all or some part of the premises. 2 Underhill on Landlord and Tenant, Sec. 670, 671."

To the same effect is *Fehringer v. Wagner Co.,* decided by this court, 61 Colo. 359, 157 Pac. 1071.

It is further urged that under the well settled rule of law an assignee of a lease is liable only for the covenants broken while he is in possession; that Husted and The Times Company committed the acts complained of as to the condition of the property, and therefore the Speer Company was not liable. The principle of law must be conceded, but the record does not justify the statement of fact.

It is not disputed that the Speer Company alone took over, arranged and occupied the second floor, which was at no time used or occupied by The Times Company.

The testimony does not separate the amounts of alleged damage as between The Times Company and the Speer Company. No effort was made by the defendant to do so,

nor was objection made to the introduction of evidence covering damage for the entire period of the lease.

The case was tried upon the theory of liability or no liability for the entire period.

The testimony of plaintiff's witnesses fixed the damages at $8,800. The testimony of defendant's witnesses fixed the damage at $1,306. The jury found the damages to be in the sum of $3,750. Whether or not this finding included damage occurring during the period of the occupancy by The Times Company is not made clear.

Upon the trial, the theories of the partners were stated by counsel to be:

"So we are suing for this $7,150 rent and for $8,000 that we contend it will cost the plaintiff to restore this building to its original order and condition."

And by defendants' counsel:

"Instead of being a building which is absolutely unrentable, we will show you, instead of its taking $6,000 or $7,000 to put this building back, we will show you by competent contractors of this town that it would not take more than $1,100 to put the building absolutely in as good rental shape as it was when it was rented. The evidence will show that whatever damage was done to the building during the occupancy was the result of what can be considered ordinary wear and tear in the business of the publication of a newspaper. And so the defendants disclaim any liability under this lease, any liability to pay rent, or any liability to respond for damages to the building by virtue of any negligence or anything else."

The testimony of both parties was directed to the condition of the building in June, 1910, when the lease was executed, and its condition on September 26th, 1914, when the lease was terminated. It will thus appear that the theory for which plaintiff in error now contends is a new and entirely different one from that presented on the trial. Then, the theory was as to liability of defendant under the covenants of the lease from its inception to its termination. Now, upon error, it is contended that recovery may be had

during a period only between the assignment of the lease to the Speer Company and the abandonment of the property. There is no better settled rule of this court than that one who goes through a trial upon the theory that a certain matter is in issue will not be heard to say in the event of review that there was no such issue. It was the clear duty of the defendant to properly assert and prove his contention upon the trial, and his failure or neglect to do so was at his peril.

The language of the court in *Savage v. Central Elec. Co.,* 59 Colo. 66, 148 Pac. 254, applies with equal propriety and force to the circumstances of this case. It was there said:

"It is now contended by plaintiff that the answer contains no sufficient plea of breach of contract. No attempt was made below, either by motion or otherwise, to make the answer more specific, definite and certain. Its averments were put in issue and plaintiff made no objection to the introduction of evidence by the defendant tending to prove the claimed breach, but, on the contrary, offered evidence at length in denial thereof. The sufficiency of the answer to present the question of a breach of the contract is urged for the first time in this court. The pleading was treated by the parties as presenting that issue and trial had on that theory, and therefore any insufficiency of the pleading in this respect must be regarded, upon review, as waived. In other words, a party who tries a cause on the theory that a given matter is in issue, when defeated on that proposition, will not thereafter be heard to say there was no such issue. *D. T. & Ft. W. R. R. Co. v. Smock,* 23 Colo. 456, 48 Pac. 681."

The defendant can not now complain, if admitting his failure to present the issue upon the trial. If this court is to assume issues not presented to the trial court, the result will be prolonged, if not interminiable litigation. Beside, in fairness and justice to the trial court, only such issues as are there presented should be reviewed here.

The judgment is affirmed.

*En banc.*

Bailey, J., dissenting.

Garrigues, J., concurring in part and dissenting in part.

White, C. J., not participating.

GARRIGUES, J., *Dissenting*.

As to the part of the opinion holding Shaffer liable for the rent, I concur. As to the part relating to damages to the building, I dissent.

The evidence shows the building was rented for a printing office and that the interior had to be changed and rearranged to make it suitable for that purpose. Mr. George knew of this, and was shown the changes that would have to be made in execution of the lease and consented thereto. It was not the agreement nor the intention of the parties that the tenant should replace these changes at the termination of the lease and put the building back as it was before the lease was executed. If it had been, the lease would have specifically so provided. The clause that the premises should be surrendered at the termination of the lease in as good condition as when taken, except as to ordinary wear and tear, relates to its use with these physical changes made by the tenant. I fear that branch of the case relating to damages to the building was tried to the court and submitted to the jury on the erroneous theory that it was the duty of the tenant at the termination of the lease to restore the interior of the building, or put it back in the condition it was in when the lease was executed. This being the case, I concur in the opinion that the judgment for the rent should be affirmed; but I think that branch of the case relating to the damages to the building should be reversed, and the cause remanded for a new trial.

Decided October 8th, A. D. 1917. Rehearing denied April 1, A. D. 1918.