**J. N. FISHER, Appellant,**

v.

**TEMCO AIRCRAFT CORPORATION et al.,
Appellees.**

**No. 7141.**

Court of Civil Appeals of Texas.

Texarkana.

May 19, 1959.

Irion, Cain, Cocke & Magee, M. R. Irion, Dallas, for appellant.

Johnson, Bromberg, Leeds & Riggs, Otis B. Gary, William D. Powell, William Latham Leeds, Dallas, for appellee Temco Aircraft Corp.

Touchstone, Bernays & Johnston, Dallas, for appellee, McClure Electric Company, Inc.

CHADICK, Chief Justice.

This is a suit for damage to real property. The judgment of the trial court is affirmed in part and in part reversed and remanded for new trial.

J. N. Fisher, as lessor, leased to Temco Aircraft Corp., as lessee, an entire 3-story brick building with a 1-story annex containing approximately 38,400 square feet floor space, located in the City of Dallas,

for a term of one year, beginning in December, 1956. Temco accepted possession of the building and entered into a contract with McClure Electric Company, Inc., to make certain additions and modifications in the electrical wiring of the building to provide electric current for computing machines Temco planned to install.

Prior to letting the contract to McClure, Temco's property manager and other employees had pointed out generally what was desired in the way of additional electric services and McClure's superintendent went on the premises and made an inspection. After the award of the contract, McClure's superintendent laid out the plan of work for McClure's employees and set them about it. The work as planned required additional electric lines to be ·brought in through a brick wall at a corner of the building and carried by conduits some 40 to 50 feet in a space between the original ceiling of a room and a false ceiling suspended some five feet below. The two employees of McClure Electrical Company performing the work had access to the space between the original ceiling and the suspended ceiling through a service room and observed that passage over the suspended ceiling could be made by laying planks across the channel irons supporting such ceiling. The planks were in place at the time they went upon the job and they proceeded to use them thereafter, shifting the planks as necessary to reach the locations to which their work carried them. During the first day of their work while both were within two or three feet of each other carrying tools and a section of conduit, the suspended ceiling gave way and a large amount of it crashed to the floor approximately 10 feet below. Fortunately neither workman was injured and they were soon rescued from their precarious position. Fisher thereafter repaired the collapsed ceiling.

In February 1958, Fisher sued Temco Aircraft Corp. and McClure Electric Co., Inc., to recover $4,893.50 actual damage for collapse of the ceiling and $5,000 exemplary damages. His third amended original petition alleged nine acts of negligence against McClure; 11 such acts against Temco, contending that each proximately caused the damage to the building for which redress was sought. Against Temco, Fisher pled the lease contract and certain provisions thereof which will be noted in detail later in the opinion. Temco answered by general denial and specifically pled that McClure was an independent contractor and pled over against McClure upon an indemnity agreement in the wiring contract. After answers were filed by both Temco and McClure, Temco filed motion for summary judgment. Replying to this motion Fisher filed an unsworn answer. At the hearing the deposition of Temco's property manager, McClure's superintendent and employees involved in the work, the lease agreement heretofore mentioned and the contract for the performance of the electrical installation between Temco and McClure were before the trial court for consideration in determining the motion. The trial court sustained Temco's motion for summary judgment and rendered a take-nothing judgment against Temco, apparently upon the theory that McClure was an independent contractor and Temco was not liable for McClure's negligent acts in performing the contract work, and directed Fisher to re-plead and omit Temco Aircraft Corp. as a defendant. Fisher complied with the order and re-pled against McClure Electric Co., Inc., and a trial was had before a jury.

Upon jury answers to special issues the trial judge entered a take-nothing judgment against McClure. Fisher filed motion for new trial which was duly overruled and has perfected his appeal. In this court Fisher seeks to review only the action of the trial court in sustaining Temco's motion for summary judgment, its action in requiring him to re-plead and omit Temco as a defendant, and the court's failure to submit for jury determination fact issues made by plaintiff's pleading and

the evidence as against Temco Aircraft Corp. Three points of error are briefed and discussed as a group by Fisher.

The central question to be resolved in this appeal is the effect of the following sections of the lease agreement between Fisher and Temco, to-wit:

"2nd. That the Lessee accepts the premises, building and each appurtenance thereto in their present condition as suitable for which the same are leased, and agrees to allow for changes between the date this lease is executed and the date Lessee occupies said premises.

"3rd. That the Lessor shall at his expense maintain in good repair the roof, foundation and exterior walls of the building. The Lessee shall maintain all glass, including plate glass, and any special store front or equipment. Lessee agrees to give Lessor written notice of defects or need for repairs in roof, foundation or exterior walls of the building.

"4th. That the Lessee shall at his expense keep the interior of the building, including the plumbing, closets, pipes and fixtures belonging thereto, in good repair; and shall take good care of the property and its fixtures and suffer no waste; and keep the water pipes and connections free from ice and other obstructions, to the satisfaction of the municipal or governmental authorities, during the term of this lease.

"All alterations, additions and improvements, except trade fixtures, put in at the expense of lessee shall become the property of the Lessor and shall remain upon and be surrendered with the premises as a part thereof at the termination of this lease.

"At the end or other expiration of the term, Lessee shall deliver up the demised premises in good order and condition, natural deterioration and damage by fire, tornado or other casualty and the elements only excepted.

"5th. That the Lessee shall promptly execute and fulfill all the ordinances of the city corporation or other governmental agency applicable to said premises because of Lessee's use of said premises, and all orders and requirements imposed by the Board of Health, Sanitary and Police Departments, for the correction, prevention and abatement of nuisances in or upon or connected with said premises because of Lessee's use thereof during the said term, all at Lessee's expense."

Fisher asserts that Temco's obligation under the lease is to keep the interior of the building in good repair, etc., and deliver up the premises in good order and condition at the end of the term, a contractual obligation under which Temco, as a matter of law, is liable for the costs of repair of the ceiling. Fisher does not by designation make an alternative contention, but the effect of his brief and argument is a contention that in the alternative Temco is liable for the cost of repair if the collapse occurred through its fault. In support of this latter contention Fisher directs attention to his pleading wherein the provisions of the Fisher-Temco lease and the Temco-McClure electrical contract are set out together with the testimony of McClure's superintendent and workmen.

Consideration of the record in this respect shows without dispute that Fisher alleged as negligence Temco's failure to inform McClure before the work was commenced that the suspended ceiling would not support the weight of two men at the same time and that McClure was an invitee upon the premises performing work for Temco, and that the ceiling collapsed when two workmen with their tools and material were standing upon boards placed upon channel irons of the suspended ceiling within two or three feet of each other, the weight thus concentrated being approxi-

mately 325 pounds. Under this record, such allegation and proof raised a fact issue of breach of the Fisher-Temco lease for jury determination if the provisions of the lease contract heretofore set out make Temco liable for the cost of repair of damage proximately caused by Temco's negligence as alleged.

■ The provisions of the contract require no construction, unless they are inconsistent, conflicting or found to be ambiguous. See 51 C.J.S. Landlord and Tenant § 232, p. 848. Brief reference to the provisions of the covenants of the lease under consideration indicates a need for construction. The language of the Fisher-Temco lease covenants requires the application of the following general rules of construction to determine the intent of the parties. The language used in the covenants "to repair" and "deliver up in good order and condition" is to be construed in connection with the provisions of the entire contract, and the several covenants bearing upon lessee's obligation in this respect are to be construed together so as to give reasonable meaning to each of them. Howeth v. Anderson, 25 Tex. 557; Ginsberg v. Jacobson, 276 Mass. 108, 176 N.E. 918; King v. Richards-Cunningham Co., 46 Wyo. 355, 28 P.2d 492. The obligation of the lessee to repair will not be extended or enlarged beyond the plain meaning of language used in the covenants. Puget Invest. Co. v. Wenck, 36 Wash.2d 817, 221 P.2d 459, 20 A.L.R.2d 1320. The covenant "to repair" or "to keep in repair" is essentially the same as the covenant to deliver up the premises in good order and condition. Shaffer v. George, 64 Colo. 47, 171 P. 881. See 45 A.L.R. 13. The lease is to be construed most strongly against the lessor. Walling v. Christie & Hobby, Tex.Civ.App., 54 S.W.2d 186; Pickrell v. Buckler, Tex. Civ.App., 293 S.W. 667; 116 Tex. 567, 296 S.W. 1062.

The covenant of the 3rd section obligates Fisher to maintain in good repair the roof, exterior walls and foundation. In the 4th section the covenant contained in the first clause of the first sentence requires Temco to keep in good repair the building interior and plumbing. In this same sentence the dependent clause that follows the first clause imposes a duty upon Temco to take good care of the whole property and fixtures. The last covenant included in Section 4 obligates Temco at the end of the term to surrender up the premises in good order and condition, natural deterioration, damage by fire, tornado ·or other casualty and the elements excepted. If the broad language of these covenants is given its usual meaning, there immediately appears a conflict between Fisher's obligation to repair roof, walls and foundation and Temco's obligation to deliver up the premises in good order and condition. This latter obligation on Temco's part extends not only to the roof, walls and foundation, but also the remainder of the structure that does not fall within the description of interior and plumbing. Undoubtedly the parties did not intend to place an obligation to repair roof, walls and foundation upon Fisher, remain silent as to other parts of the structure except interior and plumbing and then nullify Fisher's obligation by placing a liability upon Temco to maintain in good repair the entire building by the final covenant requiring Temco to deliver up the premises in good order and condition, excepting therefrom only natural deterioration, damage by fire, etc.

As noted, Temco's obligation to keep the interior and plumbing in good repair is expressed in a clause of the first sentence of section 4 and is followed by a dependent clause in the same sentence requiring Temco to take good care of the property. If broad meaning be indulged, the language expressing these obligations creates conflicts, inconsistencies. Broadly, to keep in good repair would cover any deterioration or damage of the interior or plumbing, regardless of the cause therefor; it would include natural deterioration, injury or damage by Temco negligently or otherwise caused or injury by strangers, damage by

fire, casualty, the elements, or injury and damage of any kind regardless of how it arose. The purpose of the dependent clause following the "keep in good repair" clause as applied to the interior and plumbing certainly was not intended to create a conflict between the two covenants, and the latter covenant could only have been intended to modify, limit and restrict the obligation of the "keep in good repair" clause. The obligation of this dependent clause is that Temco take good care of the premises as a whole. The Dallas Court of Civil Appeals had occasion to determine the meaning of a lease covenant couched in the exact language of this dependent clause in Norman v. Stark Grain & Elevator Co., Tex.Civ.App.1922, 237 S.W. 963, 966, wr. ref. Besides holding that such language in its legal effect is not equivalent to a covenant to repair, it said:

> "* * * The language of the clause under discussion clearly excludes the idea that it was in the contemplation of appellant and appellee that appellee should be found thereby to do more than take ordinary reasonable care of the property according to its nature during the term of the lease, * * *"

■■ The lease in this case is upon a form copyrighted by the Dallas Real Estate Board in 1947. Construing together the first clause of the first sentence in Sec. 4, and the dependent clause immediately following, it is inescapable that the two covenants contained therein were intended to fix the liability of Temco to repair the interior and plumbing in accordance with the standard of care enjoined upon Temco in the use of the premises. The standard of care as thus agreed upon in the dependent clause is a restriction of the obligation to repair generally, and Temco's liability therefor; its effect being to reduce Temco's liability for repair to the deterioration, injury or damage negligently caused by Temco. Stated otherwise, Temco's obli-

gation under these two covenants is to use the property in the manner a prudent person would use his own property and either repair or respond in damages to Fisher to the extent Temco negligently fails to so use the property. And as previously noted, it has been held that covenants "to repair" almost identical in wording and of substantially the same meaning as the "keep in good repair" covenant in the Fisher-Temco lease (but not limited to the interior and plumbing nor by the obligation to "take good care") and the covenant to deliver up the premises at the term's end in good order and condition are substantially one and the same obligation. See 45 A.L.R. 13. Upon such reasoning the limitation upon the covenant to repair in the Fisher-Temco lease would be a limitation upon the obligation to surrender in good order and condition. Applying the rules that liability of the lessee will not be enlarged nor extended beyond the clear meaning of the language the parties used in writing the covenants, and if doubtful construed most strongly against the lessor, the covenant to deliver up the premises in good order and condition would not make Temco liable for repairs to the roof, walls or foundation and other parts of the building not included within the term "interior and plumbing," and the "deliver up" covenant is restricted by the "take good care" covenant. Following such reasoning, Temco's liability thereunder is to deliver the premises at the end of the term in good order and condition by repairing all deterioration, injury or damage occasioned by Temco's negligence in its use of the property.

■ The construction here made gives meaning and purpose to the language of the contract and avoids that harsh construction which would virtually make Temco an insurer of the property, except as against natural deterioration, fire, tornado and other casualty and the elements. This construction seems to be in harmony with the spirit of a number of the decided cases in Texas. Insofar as it can be ascertained

by an examination of the reports, the following cases, though distinguishable and not directly in point, show a tendency of the Texas courts to favor a construction that would not make the lessee an insurer under "repair" and "deliver up in good order and condition" covenants of a lease, to-wit: Howeth v. Anderson, 25 Tex. 557; Miller, Billups & Co. v. Morris, 55 Tex. 412; Henson v. Baxter, Tex.Civ.App., 166 S.W. 460; Norman v. Stark Grain & Elevator Co., supra; Clark & Johnson v. Hamilton, Tex. Civ.App., 16 S.W.2d 833; Daugherty v. Glass, Tex.Civ.App., 53 S.W. 705; Bachrach v. Estefan, Tex.Civ.App., 184 S.W.2d 640; Orr v. Vandygriff, Tex.Civ.App., 251 S.W.2d 573.

■ The very able trial judge sustained the summary judgment in favor of Temco upon the theory that Temco and McClure were being jointly and severally sued in a tort action and Temco was not liable for the negligent acts of its independent contractor. In this respect the trial court was correct and no injury is shown in that regard; however, such action overlooks the theory that Temco was also being sued in an action involving the breach of the lease contract. The record indicates confusion and a last-minute filing of Fisher's third amended original petition presenting the breach of contract theory and it is doubtful that a clear expression of its basis was made to the trial judge. However, such theory was presented by Fisher's pleading and the evidence in the summary judgment motion hearing. The record shows that McClure though an independent contractor was the instrument by which Temco chose to effect additions to the electrical wiring and as a contractor McClure's employees were invitees upon the premises. McClure's negligence or freedom from it in the performance of the work contracted to be done does not determine the liability of Temco under the Fisher-Temco lease agreement. The allegations of Fisher's pleading previously mentioned respecting Temco's fail-ure to inform McClure that the suspended ceiling would not support the weight of two workmen at the same time and other allegations that Temco failed to warn McClure of the condition of the suspended ceiling together with proof that the ceiling did collapse when two workmen carrying tools and material approached within two or three feet of each other while above and standing upon the ceiling raised a fact issue as to Temco's negligence under the contract which should have been submitted for determination in a trial upon the merits of the case. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93.

It becomes necessary that the case as to Temco be reversed and remanded for trial upon the merits.

Temco's counter-point that Fisher failed to preserve anything for review on appeal because of insufficient assignments in his motion for new trial are not well taken and will be overruled in view of the liberal procedure permissible under the rules respecting review on appeal.

■ The judgment of the trial court in favor of McClure insofar as Fisher's tort action against McClure is concerned is affirmed. The ultimate issues in such action are severable from the ultimate issues in the action against Temco arising out of the lease contract. Suit against McClure has been tried to the apparent satisfaction of Fisher as he has not perfected an appeal from any action of the court in the trial of the tort action. Requiring Fisher to proceed against McClure alone was not an abuse of the discretion lodged in the trial court under Rules 41 and 174, Vernon's Ann. Tex. Rules of Civil Procedure. Rose v. Baker, Tex.Com.App., 143 Tex. 202, 183 S.W.2d 438.

■ However, as between Temco and McClure, a complicated question arises as to the effect of the indemnity section of the wiring contract. The language of the in-

**578**

demnity agreement leaves considerable doubt as to whether it was intended to indemnify Temco against damage arising from Temco's breach of its lease with Fisher though there seems to be no doubt that it was intended to indemnify Temco against cost of claims arising by reason of a negligent or unskillful performance of the contract. The problem of construction is complicated by the action of the trial court in sustaining Temco's motion for summary judgment and discharging Temco from the proceedings in the trial court. The record indicates that there might be basis for additional pleading and proof as between Temco and McClure had the trial court not sustained the summary judgment. As an example, Temco did not plead that McClure was negligent in any respect in performing the wiring contract or that McClure had notice of the provisions of the Fisher-Temco lease. On the other hand, the record might justify McClure in pleading a special defense based upon the fact that Temco was in possession of the demised premises and requested McClure to bid on the additional wiring contract and thereafter awarding McClure such contract. Upon the theory that such request and award was a representation by Temco to McClure that Temco had the right and authority to have such work done, estoppel or other defense might be shown. In the state of the record as it is now presented it cannot be determined with certainty what was within the contemplation of the parties when the indemnity agreement was made. Justice requires that a fuller development of the case as between Temco and McClure be made. McClure, therefore, must be retained as a party and respond to Temco's pleading in its action against McClure upon the indemnity agreement.

The judgment of the trial court is reversed as to Temco and remanded for trial upon the merits together with a trial upon the merits of Temco's action against McClure upon its allegations of McClure's liability to indemnify.