Mauricio FRANK, Appellant,

v.

Paul KUHNREICH and Belinda, Inc., Appellees.

No. 15641.

Court of Civil Appeals of Texas, San Antonio.

Jan. 5, 1977.

Rehearing Denied Feb. 16, 1977.

cause of the failure of the lessee to comply with the terms of the lease. Both parties filed motions for summary judgment on the question of liability, and on December 20, 1973, the court found that a forfeiture and termination of the lease was not warranted; and based on this finding, the court granted plaintiffs' motion for summary judgment and denied defendant's motion. Trial on the damage issues was to a jury, and in response to the jury's answers on the special issues submitted, judgment was rendered on January 22, 1976, awarding damages to the plaintiffs.

The lease agreement, between Paul Kuhnreich as lessee and Mauricio Frank as lessor, was entered into on February 15, 1969, covering certain property in Laredo, Webb County, Texas, herein referred to as the Iturbide Street property. This lease was for a period of five years, with an option to extend for an additional three years.

The pertinent portions of the lease here involved may be summarized as follows:

Paragraph 7. It is specifically understood and agreed that lessor will carry Fire and Extended Coverage Insurance on the building located on said leased premises. The lessee, however, shall carry liability insurance on the leased premises to protect both the lessee and the lessor with limits of not less than $100,000/$200,000 and the premium for said liability insurance shall be paid by lessee. In addition, the lessee shall carry plate glass insurance on the front windows and the premium for such insurance shall be paid by lessee.

J. G. Hornberger, J. G. Hornberger, Jr., Laredo, for appellant.

Roy J. True, True & Zable, Dallas, for appellees.

KLINGEMAN, Justice.

This is a suit by Paul Kuhnreich and Belinda, Inc. against Mauricio Frank for specific performance of a lease agreement and for damages. Frank answered by general denial and a cross-action seeking a forfeiture and termination of the lease be-

Paragraph 13. It is understood and agreed that if rent or other monies remain unpaid for a period of ten days after mailing of notice by the lessor stating that same is unpaid, then failure to pay such rent by registered mail forthwith shall operate as a forfeiture under this lease at the option of the lessor and in the event that any default shall remain unremedied for fifteen days after written notice by registered mail, then the lessor may at his option declare this lease forfeited and the terms shall

thereupon end and he may proceed as hereinafter provided.

Paragraph 15. The lessee covenants and agrees that if at any time there should be any default in the payment of any rent or any other consideration herein contained or neglect to perform and observe any or either of the covenants contained in this instrument, which on his part is to be performed, or the performance of any of the terms and conditions of this lease, then upon such default, the entire rent for the balance of the term shall, at the option of the lessor at once become due and payable, as if by the terms of this lease they were all payable in advance, or at the option of the lessor the tenancy hereby created may be terminated, and the said lessor, his heirs, representatives or assigns may cancel this lease forthwith at his option and may recover the possession of the demised premises and may dispossess all persons therefrom.

Paragraph 17. Should the premises herein be destroyed or rendered untenantable by fire or the elements, lessor agrees to cause to be rebuilt or repaired the improvements on said premises in essentially the same condition as they are at the inception of this lease. It is specifically understood and agreed that such replacement or repairs of such improvements shall be made within a reasonable time from the time that said premises become untenantable, and it is further agreed that during the time that such premises remain untenantable, the rent provided for herein shall be abated.

Paragraph 23. Lessee is hereby given the right and option to extend this lease for an additional three (3) years from and after March 31, 1974, upon the same terms and conditions as are contained in this lease, EXCEPT that the rental shall be as follows: (here follows schedule of monthly rentals). Should the lessee desire to exercise this option he shall give written notice to the lessor of his intention to so exercise such option on or before October 31, 1973. Failure of lessee to give such notice, as herein provided, shall operate to nullify and destroy the option herein granted.

Kuhnreich opened his business, known as Belinda's, in the leased premises on April 14, 1969. It was operated as a ladies and men's ready-to-wear store. A fire occurred on the premises on or about January 12, 1972, causing substantial damages. A fire sale was thereafter conducted by plaintiffs until about May 31, 1972, and possession was not relinquished by plaintiffs until on or about June 7, 1972.

On July 1, 1972, Kuhnreich subleased to Belinda, Inc. (all the stock of Belinda, Inc. was owned by Kuhnreich). Thereafter, LeBaron, Inc., successor to Belinda, Inc., took over such operations in the latter part of 1972 or early 1973. Kuhnreich owns 50% of the stock of LeBaron.

Repair work on the premises started in September of 1972. There is some testimony that the lessee was getting apprehensive during this period and complained to the lessor about delay in the repair work, and there is also some testimony that the lessor attempted to negotiate for more favorable rentals under the contract. Frank contends that the premises wee substantially completed by December 1972, but there is some dispute as to this. On January 4, 1973, Frank, through his attorney, wrote to plaintiffs making certain inquiries about compliance with the provisions for carrying liability insurance,[1] and on January 12, 1973, the attorney for Frank wrote to plaintiff and advised him that because of his failure to comply with the terms of the lease agreement, the lease was being terminated. On January 22, 1973, plaintiffs filed suit against defendant seeking specific performance and damages, as hereinbefore stated.

Frank asserts 43 points of error, some of which seek rendition while the others seek a remand.

A number of points of error complain that the trial court erred in granting plaintiffs' motions for summary judgment.

---

1. Demand is hereby made for you to present to me or Mr. Frank immediately competent evidence that the insurance referred to in such paragraph has been in force since inception of the lease.

There appears in this transcript a letter dated December 20, 1973 from the trial judge addressed to the attorneys of record, which is filed in the record of such cause and which purports to be the order granting plaintiffs' motion for summary judgment and denying defendant's motion for summary judgment.

The pertinent portions of such letter may be summarized as follows:

(a) Both parties filed motions for summary judgment, plaintiffs' seeking specific performance and possession under the lease contract, and defendant seeking forfeiture and termination of the lease.

(b) There is no genuine issue of material fact.

(c) Defendant contends that the lease terminated because of failure to comply with the lease provision pertaining to insurance coverage, and that paragraph 15 of the lease is controlling.

(d) Plaintiffs contend that paragraph 13 of the lease is controlling, that they fully complied with the provisions thereof.

(e) The premises were not covered by liability insurance for certain periods of time, but it is undisputed that within 15 days after notification of such insurance default, such defaults were remedied.

(f) The motion for summary judgment of defendant is denied, and the motion for summary judgment of plaintiffs is sustained.

■ The letter contained in the records is not a proper method for entry of a judgment and we do not approve this kind of procedure. The letter contains statements and other material not ordinarily contained in a judgment and a letter of this sort addressed to the attorneys for purposes of appellate procedure is ordinarily a nullity. *Benedict v. Benedict,* 542 S.W.2d 692 (Tex. Civ.App.—Fort Worth 1976, no writ); *Tejas Trail Property Owners Association v. Holt,* 516 S.W.2d 441 (Tex.Civ.App.—Fort Worth 1974, no writ).

The final judgment, dated January 22, 1976, does not mention the motions for summary judgment and such summary judgments are not disposed of by direct language in such judgment. In *North East Independent School District v. Aldridge,* 400 S.W.2d 893 (Tex.1966), the Court, in discussing the finality of judgments for appellate purpose, stated:

> When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

Under such rule, the judgment, dated January 22, 1976, awarding damages to plaintiff, impliedly made all findings necessary to support the judgment, including the liability issues. The points of error are properly before us by virtue of defendant's points of error pertaining to the motions for summary judgment, hereinbefore set forth, and also by points of error of defendant in which he complains that the trial court erred as a matter of law in granting judgment for plaintiffs and in not granting judgment for defendant, and in failing to grant defendant's motions for judgment non obstante veredicto.

Frank makes no contention that there are any disputed issues of material fact as to the question of liability. His points of error as to liability assert: (a) it is undisputed that plaintiffs were in violation of the insurance provisions contained in the lease; (b) since plaintiffs clearly violated the provisions of the lease, under the terms of the lease no notice was required, and that the lease was effectively terminated by the letter of January 12, 1973; (c) the trial court erred in granting plaintiffs' motion for summary judgment and in overruling defendant's motion for summary judgment; (d) the trial court erred as a matter of law in granting judgment for plaintiffs' and in not granting judgment for defendant; (e) the trial court erred in not granting defend-

ant's motion for judgment non obstante veredicto; (f) this case should be reversed and judgment here rendered in favor of defendant that plaintiffs take nothing.

We have concluded that the trial court did not err in granting plaintiffs' motion for summary judgment and in refusing to grant defendant's motion for summary judgment because of the following reasons:

■ (1) The courts do not favor forfeitures and unless compelled to do so by language that will admit no other construction, forfeiture will not be enforced. *G. C. Murphy Company v. Lack,* 404 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.); *Henshaw v. Texas Natural Resources Foundation,* 147 Tex. 436, 216 S.W.2d 566 (Tex. 1949); 36 Tex.Jur.2d Landlord & Tenants §§ 253, 254 (1962).

■ (2) A written contract must be considered and construed together and various provisions or parts of the lease are to be construed as a unified whole unless they are so repugnant and inconsistent as to nullify each other. A lease, like other written agreement, should be given a reasonable construction that will carry out the intention of the parties as expressed by the language of the contract.

■ (3) A lease is governed by the general rule of construction of written instruments. *Any doubts as to the meaning of the language of the lease are to be resolved most strongly against the lessor who prepared it.* 35 Tex.Jur.2d Jury § 20 (1962); *Fisher v. Tempco Aircraft Corporation,* 324 S.W.2d 571 (Tex.Civ.App.—Texarkana 1959, no writ); *Dedear v. Wilson,* 220 S.W.2d 534 (Tex.Civ.App.—Austin 1949, writ ref'd); *Pickrell v. Buckler,* 293 S.W. 667 (Tex.Civ. App.—El Paso 1927, no writ).

■ We have examined and considered the entire lease, including specifically, paragraphs 13 and 15 of the lease. Paragraph 13 of the lease clearly provides for written notice of default to be given lessee, with a specified time to cure such default and avoid forfeiture of the lease. We see no purpose for such provision in the lease if the parties intended that the lessor could terminate the lease without notice. The parties did not intend to do a useless thing.

A reasonable construction of the two provisions, taken together, is that after a particular default, the party in default was to be given written notice of such default with the right to cure such default within the time therein provided. The lease did not give the lessor the right to terminate the lease without notice, under the complete terms and provisions of the lease.

We have concluded that the trial court did not err in refusing to grant defendant's motion for summary judgment and in granting plaintiffs' motion.

■ We will next consider those points of error which, if sustained, will require a reversal and remand of this case. These points of error pertain to the jury answers on the damage issues. The jury found, in answer to special issues submitted, that (1) defendant could have turned over the leased premises in a tenantable condition on October 7, 1972; (2) defendant failed in turn over the leased premises to plaintiffs in a tenantable condition; (3) plaintiff, LeBaron, as successor to Belinda, Inc., suffered loss of profits as a result of defendant's failure to turn over the leased premises to plaintiffs; (4) the sum of $3,500.00 per month would reasonably compensate plaintiff LeBaron for its loss of profits. Based upon such jury findings, judgment was entered that Kuhnreich recover judgment against defendant for $550.00 a month commencing October 7, 1972, and continuing through March 31, 1974, an aggregate amount of $9,900.00; LeBaron recover judgment for $3,500.00 a month commencing on October 7, 1972, aggregating $63,000.00. The court refused to award damages for the three year option period. Defendant alone excepted to the judgment and gave notice of appeal to this court.

By a number of points of error, defendant asserts that the jury's answers to Special Issues 1, 2, 4, and 5 are supported by no evidence, insufficient evidence, and that the jury's answers thereto are against the great weight and preponderance of the evidence.

We will first consider the special issues which pertain to lost profits in which defendant asserts that the evidence concerning lost profits is too uncertain or speculative to support any recovery for lost profits; that the jury answers to these issues are insufficiently supported by the evidence; and are against the great weight and preponderance of the evidence.

The leased premises involved, sometimes referred to as the Iturbide Street Store, contains an area of 4,500 square feet. Such lease was prepared by Frank's lawyer. In April of 1969 Kuhnreich established a business at such leased premises under the name of Belinda. Kuhnreich was the sole owner and the business carried on was a ladies and men's ready-to-wear store. This operation continued until the fire occurred on January 12, 1972, causing substantial damage to the leased premises. A fire sale was thereafter conducted until about May 31, 1972, and on June 7, 1972 the premises were delivered back to Frank.

Kuhnreich testified that he intended to go back into business in this location when the premises were repaired. Kuhnreich further testified that it was his intention to operate therein a business which would include men's wear, electronics, crystal, porcelain, gifts, and novelties. On the first day of July 1972, Kuhnreich made a sublease of the premises to Belinda, Inc., wherein Belinda, Inc. was to pay Kuhnreich $550.00 a month more rental than Kuhnreich was paying Frank. Kuhnreich was the sole owner of Belinda, Inc. Sometime after the fire, Belinda, Inc. leased 1,200 square feet of space known as El Lider at an entirely different location. This store was operated from March 1973 until October 31, 1974. The El Lider store sold televisions, stereos, calculators, crystal, porcelain, china, gifts, and novelties. Kuhnreich testified that the average monthly profit at the El Lider store was between $7,000.00 and $8,000.00 a month, but on cross examination he was unable to give specific information in regard thereto and stated that his accountant, Arthur Rossi, knew the details thereof. However, he did testify that for the first

year of operation there was a loss of $14,985.87, including a carryover loss of $29,413.97.

There is testimony that the El Lider location was a temporary location, and Kuhnreich testified that he intended to open another location at 1006 Grant, which was a larger store containing between 3,000 and 3,500 square feet. Plaintiffs continued to operate in the El Lider location until October 31, 1974, when they moved into the Grant location. This business is primarily an electronics business with much of the electronics equipment being sold into Mexico.

The only other witness who testified as to profits was Arthur Rossi, a C.P.A. who handles Belinda's and LeBaron's books. He stated that LeBaron's was a business that sells electronics and a variety of other goods. He testified that LeBaron's profits ranged from a high of $6,812.00 a month for a particular period (March 1974 to March 1975) to a low of $5,337.68 a year for the fiscal year which ended February 28, 1974, depending on whether or not officers' salaries were included in computing such figures. It is seen that the supposed profits vary greatly depending on whether or not officers' salaries are included. Moreover, there is testimony that plaintiffs had a income tax loss for some of the years involved. The figures are rather meaningless. The officers could, either by raising or decreasing their salaries, materially change the amount of profits.

He was then asked what the profits would have been if it would have been operating at Iturbide Street and stated that he did not have a positive opinion. He further testified that most of the sales made by plaintiffs were made into Mexico and that the amount of volume and the amount of profits would depend on whether the Mexican government permitted electronics devices to be taken into Mexico without payment of duty.

In *Southwest Battery Corporation v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938), the Court stated:

In the early decisions a rigid rule affecting the right of recovery for lost profits was announced. Modern business methods have caused a relaxation of that hard rule. . . .

The rule denying a recovery where the facts show that such profits claimed are too uncertain or speculative, or where the enterprise is new or unestablished, is still enforced, on the ground that the profits which might have been made from such business are not susceptible of being established by proof to that degree of certainty which the law demands * * *

It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. The courts draw a distinction between uncertainty merely as to the amount and uncertainty as to the fact of legal damages. Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages. . . . Where, . . . it is shown that the business was a going concern, and was making a profit, when the contract was breached, such pre-existing profit, together with other facts and circumstances, may be considered in arriving at a just estimate of the amount of profit which would have been made if plaintiff had not breached its contract.

In 17 Tex.Jur.2d Damages § 149 (1960), it is stated:

To substantiate his claim of lost profits the plaintiff must bring forward convincing evidence; opinions and mere estimates will not suffice. And lost profits will not be considered sufficiently proved in the absence of factual data offered to show prospective income, predicated on such factors as previous experience, past earnings of the same or a similar business, the competitive relationship of the business, and the prospects of continued public acceptance of the product or service offered.

The testimony as to lost profits may be summarized as follows:

(a) Plaintiff operated a ladies and men's ready-to-wear store at the leased premises (1205 Iturbide). This covered the period from April 1969 to June 1972. The only evidence as to profits earned in such store was testimony that there was a $29,413.97 carryover loss in the years 1973 and 1974.

(b) All the other testimony as to profits pertains to the operation of an entirely different type of business (electronics, novelties, giftware, etc.) at entirely different locations. Even this testimony is conflicting with different figures as to taxable income and as to average monthly profits. The amount of such profits differ greatly depending on whether the profit includes the salaries of the officers of the corporation or whether it was exclusive of salaries.

(c) Plaintiffs' accountant, when asked what plaintiffs' monthly profits would have been if it was operated at Iturbide Street, stated that he had no positive opinion. There is no evidence whatsoever of any profits at the established business at the leased premises, 1205 Iturbide Street.

(d) Moreover, there is no testimony as to the desirability of the various locations involved. There is absolutely no evidence in the record as to the location of the stores, customer availability, the probability that the business will remain stable over a period of years, or the probability of increased business. There is no factual data which would show what profits, if any, would have been made at the leased premises.

The thrust of plaintiffs' contention is that since there is testimony that he made "X" profits at a new and different location in an entirely different type of business, then, therefore, he is entitled to "X" profits. This does not necessarily follow.

Under the record before us, it is a matter of some conjecture and speculation as to whether plaintiffs suffered any damages. Their claim for damages is based on testimony that they were making "X" amount of profit as an electronics, novelties, and gifts business at two locations in Laredo, El

Lider and Grant Street, but there is no testimony as to what effect the opening of another store selling these same type of items on the leased premises (Iturbide Street) would have had on the total amount of profits made; whether they would have been the same, less, or more.

In our opinion, plaintiffs failed to establish by competent evidence the amount of the damages, if any, that they sustained at the leased premises with that degree of certainty which the law requires.

Defendant also asserts that the trial court erred in holding Frank liable to Kuhnreich for damages in the amount of $550.00 a month, which is the difference in the amount Belinda, Inc., as sublessee, was to pay him as rent and the amount he was to pay Frank. The sublease between Kuhnreich and Belinda, Inc. was signed on July 1, 1973, after the fire and at the time Kuhnreich owned all the stock of Belinda and was the sole owner thereof. Kuhnreich admitted that he was basically leasing to himself.

A lessee has a duty to mitigate the damages, if possible, and the sublease, which Kuhnreich made, in effect artificially increased the amount of damages. There is no showing that the sublease agreement Kuhnreich made with Belinda, Inc. had any relationship to market value, and there is no showing that Kuhnreich suffered any real damages by virtue of this sublease. The court erred in awarding Kuhnreich damages in the amount of $550.00 per month.

Because of the errors hereinabove discussed, we have concluded that the judgment must be reversed and remanded.

By a cross-point, appellees urge that the trial court erred in not granting specific performance of the lease for the period covered in the option to extend the lease and that they are entitled to a calculation of their monthly damages so as to cover the three year additional period covered in such option. They ask for a modification or reformation of the judgment in this respect. Even if we were inclined to agree that the profits, if any, would be applicable also to this period, which we specifically do not herein pass on, there is no evidence in the record as to anticipated profits for such period of time. In view of our general remand, we will not consider such cross-point.

We have concluded that the judgment of January 22, 1976 must be reversed, and that the interest of justice would best be served by a general remand.

The judgment is reversed and remanded to the trial court for a new trial.

CADENA, Justice.

I do not agree it was error to award $550.00 per month.