NO. 07-03-0104-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MAY 31, 2005
_____

BEVERLY ENTERPRISES-TEXAS, INC. and BEVERLY
HEALTH and REHABILITATION SERVICES, INC.,
f/k/a BEVERLY ENTERPRISES, INC.

Appellants

v.

CLIFFORD E. MORTON, successor-in-interest to M.S. INVESTMENTS,

Appellee
_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 43,907-C; HON. PATRICK A. PIRTLE, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

Beverly Enterprises-Texas, Inc. and Beverly Health and Rehabilitation Services, Inc.,

f/k/a Beverly Enterprises, Inc. (Beverly) appealed from a judgment granted in favor of

Clifford E. Morton, successor-in-interest to M.S. Investments (Morton). Five issues, some

with multiple sub-issues, were raised by Beverly. They involved the sufficiency of the

evidence supporting the jury's verdict, the exclusion of evidence, the trial court's jury charge

and the purported irreconcilable answers of the jury to various questions posed in the

charge, and the manner in which prejudgment interest was calculated. In turn, Morton cross-appealed, and his issue also concerns the manner in which prejudgment interest was calculated. We reverse the judgment and remand the cause.

## *Background*

The dispute between the parties concerned Beverly's obligations under a lease agreement. It leased a facility from Morton to operate a nursing home. Morton sued Beverly to recover damages due to Beverly's failure to maintain the leased premises as promised in the lease. Trial was to a jury, which body ultimately found in favor of Morton. After judgment was entered, both sides appealed.

## *Issue One – Sufficiency of the Evidence*

Through its first issue, Beverly attacks the sufficiency of the evidence underlying aspects of the jury's verdict. This particular issue consists of multiple sub-issues which we consider in the order raised.

*Waiver*

Beverly initially contends that Morton waived any right he had to sue upon the obligations imposed in article 13 of the lease or, alternatively, Beverly was entitled to an instruction on waiver given the presence of some evidence creating an issue of fact on the matter. This is purportedly so because Morton's partner (Stan Studer and co-lessor) informed Beverly, via a letter dated February 13, 1996, that it was his and Morton's intention "to have Beverly return to us the facility in the original condition delivered to Beverly in 1981, reasonable wear and tear excepted." The quoted provision, according to Beverly, evinced the intent of both Morton and Studer to impress upon the tenant those

2

obligations imposed by article 19 of the lease and forego those imposed by article 13. We sustain the issue.

> Article 13 obligated the lessee (Beverly) to:

> . . . maintain in good condition the roof, exterior walls (including painting) and the foundation so that the premises will be tenantable . . . [and] . . . at its sole expense . . . keep in good repair the interior portions of the building including interior painting, painting of exterior trim and walls and to make necessary repairs, including but not limited to, the repair of the driveways and parking lot, landscaping, electrical services and plumbing in the building, floor drains, floor covering, light fixtures and maintenances [sic] of the air conditioning and heating equipment, fire alarm and sprinkler systems, and the glass, including the replacement of glass if necessary. All repairs made by Lessee shall be at least equal in quality to the original. The Lessee shall receive all benefits which the Lessors may be entitled to receive from any warranties and guaranties on account of work in or on the premises, including any equipment therein, the maintenance of which is the responsibility of the Lessee . . . .

Additionally, the repairs contemplated were to "be at least equal in quality to the original." So too did Beverly bind itself to return the premises "in as good condition as the same is at the date of commencement of the term thereof, reasonable wear and tear only excepted." The latter duty appeared in article 19 of the agreement. And, as can be seen, the duties imposed by each provision differed somewhat.

Simply put, article 13 addressed the repairs to be undertaken by the lessee during the term of the lease while article 19 involved the condition in which the lessee was to return the property upon expiration of the leasehold. Furthermore, both envisioned that the property would be maintained in "good condition." *See Fisher v. Temco Aircraft Corp.*, 324 S.W.2d 571, 575 (Tex. Civ. App.–Texarkana 1959, no writ) (stating that "the covenant 'to repair' or 'to keep in repair' is essentially the same as the covenant to deliver up the premises in good order and condition"). Yet, each contained additional language that the

3

other omitted and that further described the duty contemplated by the respective article. For instance, the repairs undertaken per article 13 during the leasehold had to be of the ilk required to "at least" restore the item being repaired to the "quality [of] the original." The same cannot be said, however, of repairs within the ambit of article 19; there, the standard remained one of good condition but allowed for "reasonable wear and tear." That is, the tenant had to return the property in as good condition as when first received except for those items that deteriorated because of reasonable wear and tear.

So, as can be seen, the lease imposed two different duties upon Beverly. Though each contemplated the property being in good condition, the scope of the duty *viz* maintaining the property in that condition differed depending upon the period in the life of the lease. During the lease term (*i.e.* as long as Beverly continued to use the premises), Beverly had to maintain the property and correct deficiencies via means which returned it to the "quality of the original." Yet, when the lease ended and Beverly relinquished the property to the lessors, good condition no longer meant that the components of the facility were to be repaired to the "quality of the original" but rather it entitled Beverly to return the premises or parts thereof in a condition less than original in quality if the diminution was attributable to reasonable wear and tear. *See Nadler v. American Motors Sales Corp.*, 764 F.2d 409, 414 (5th Cir. 1985) (noting this difference in duties in a similarly worded lease).

With the foregoing difference in duties in mind, we return to the Studer letter. Prior to its delivery, Morton found fault in how Beverly complied with its duty to repair the premises it continued to occupy. A September 1995 letter sent by his attorney indicated as much; indeed, express reference was made to article 13 and Beverly's obligations under

4

it.[1]  Several months later and days before the lease was to end, Studer forwarded to Beverly a letter simply directing it to return the property "in the original condition delivered . . . reasonable wear and tear excepted."  Nothing was said in the letter about article 13 or repairing the facility or its components to the "quality of the original."  Rather, Studer used words akin to those used in article 19 and permitting Beverly to return the facility without correcting those conditions caused by reasonable wear and tear.  So, comparison of the two letters illustrated a difference in the demands being made upon Beverly.  Earlier, the lessors sought compliance from Beverly with both articles while later they sent a letter demanding compliance with those duties mentioned in article 19 alone.

Waiver is defined as the intentional relinquishment of a known right or intentional conduct inconsistent with claiming the right.  *Shaver v. Schuster*, 815 S.W.2d 818, 824 (Tex. App.–Amarillo 1991, writ denied).  Whether such occurred is normally a fact issue for the jury to determine based upon the evidence and reasonable inferences therefrom.  *Id.*  Moreover, if some evidence of waiver appears of record and the defense is alleged in the pleadings, then the trial court must instruct the jury of the matter.  *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663-64 (Tex. 1999) (stating that the trial court must submit in its charge all questions, instructions, and definitions raised by the pleadings and evidence); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 227 (Tex. App.–Amarillo 2003, no pet.) (requiring the same).  Here, Beverly pled waiver in its supplemental answer.  Furthermore, comparison of the September and February letters illustrate that the lessors 1) knew of articles 13 and 19 and the rights and duties encompassed in each and 2) days

---

[1]So too did the letter refer to the condition in which the property had to be upon its return and as contemplated by article 19.

5

before the lease was to end, demanded compliance with article 19, not article 13. This is some evidence sufficient to create a fact issue regarding each element of waiver. And, being sufficient to so create an issue of fact, the trial court was obligated to have the jury determine if Morton waived compliance with article 13. By not doing so, the trial court erred. Finally, the error was harmful given that waiver, if found by the jury to have occurred, would have altered the damages recoverable by Morton.[2]

In short, we sustain that portion of issue one involving the trial court's failure to instruct the jury on waiver. Moreover, sustaining that issue relieves us from having to address the remaining issues. Accordingly, we reverse the judgment of the trial court and remand for further proceedings.


Brian Quinn
Chief Justice

---

[2]Though the jury generally was asked to determine the amount of damages suffered by Morton due to Beverly's purported failure to comply with the lease provisions (which included articles 13 and 19), the trial court also asked that it decide what amount of damages was attributable solely to the breach of article 19. The former sum was $848,310 while the latter was $100,000. Thus, had the jury been given the opportunity to decide if Morton waived the rights contained in article 13, the amount of damages recoverable from Beverly may have been quite less.