NO. 07-03-0104-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 31, 2005


______________________________



 BEVERLY ENTERPRISES-TEXAS, INC. and BEVERLY 


HEALTH and REHABILITATION SERVICES, INC.,


f/k/a BEVERLY ENTERPRISES, INC.




 Appellants


v.



CLIFFORD E. MORTON, successor-in-interest to M.S. INVESTMENTS,


 

 Appellee

_________________________________



FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;



NO. 43,907-C; HON. PATRICK A. PIRTLE, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Beverly Enterprises-Texas, Inc. and Beverly Health and Rehabilitation Services, Inc.,
f/k/a Beverly Enterprises, Inc. (Beverly) appealed from a judgment granted in favor of
Clifford E. Morton, successor-in-interest to M.S. Investments (Morton). Five issues, some
with multiple sub-issues, were raised by Beverly. They involved the sufficiency of the
evidence supporting the jury's verdict, the exclusion of evidence, the trial court's jury charge
and the purported irreconcilable answers of the jury to various questions posed in the
charge, and the manner in which prejudgment interest was calculated. In turn, Morton
cross-appealed, and his issue also concerns the manner in which prejudgment interest was
calculated. We reverse the judgment and remand the cause.

Background


 The dispute between the parties concerned Beverly's obligations under a lease
agreement. It leased a facility from Morton to operate a nursing home. Morton sued
Beverly to recover damages due to Beverly's failure to maintain the leased premises as
promised in the lease. Trial was to a jury, which body ultimately found in favor of Morton. 
After judgment was entered, both sides appealed.

Issue One - Sufficiency of the Evidence


 Through its first issue, Beverly attacks the sufficiency of the evidence underlying
aspects of the jury's verdict. This particular issue consists of multiple sub-issues which we
consider in the order raised.

 Waiver

 Beverly initially contends that Morton waived any right he had to sue upon the
obligations imposed in article 13 of the lease or, alternatively, Beverly was entitled to an
instruction on waiver given the presence of some evidence creating an issue of fact on the
matter. This is purportedly so because Morton's partner (Stan Studer and co-lessor)
informed Beverly, via a letter dated February 13, 1996, that it was his and Morton's
intention "to have Beverly return to us the facility in the original condition delivered to
Beverly in 1981, reasonable wear and tear excepted." The quoted provision, according to
Beverly, evinced the intent of both Morton and Studer to impress upon the tenant those
obligations imposed by article 19 of the lease and forego those imposed by article 13. We
sustain the issue. 

 Article 13 obligated the lessee (Beverly) to:

 . . . maintain in good condition the roof, exterior walls (including painting) and
the foundation so that the premises will be tenantable . . . [and] . . . at its sole
expense . . . keep in good repair the interior portions of the building including
interior painting, painting of exterior trim and walls and to make necessary
repairs, including but not limited to, the repair of the driveways and parking
lot, landscaping, electrical services and plumbing in the building, floor drains,
floor covering, light fixtures and maintenances [sic] of the air conditioning and
heating equipment, fire alarm and sprinkler systems, and the glass, including
the replacement of glass if necessary. All repairs made by Lessee shall be
at least equal in quality to the original. The Lessee shall receive all benefits
which the Lessors may be entitled to receive from any warranties and
guaranties on account of work in or on the premises, including any
equipment therein, the maintenance of which is the responsibility of the
Lessee . . . .


Additionally, the repairs contemplated were to "be at least equal in quality to the original." 
So too did Beverly bind itself to return the premises "in as good condition as the same is
at the date of commencement of the term thereof, reasonable wear and tear only
excepted." The latter duty appeared in article 19 of the agreement. And, as can be seen,
the duties imposed by each provision differed somewhat. 

 Simply put, article 13 addressed the repairs to be undertaken by the lessee during
the term of the lease while article 19 involved the condition in which the lessee was to
return the property upon expiration of the leasehold. Furthermore, both envisioned that the
property would be maintained in "good condition." See Fisher v. Temco Aircraft Corp., 324
S.W.2d 571, 575 (Tex. Civ. App.-Texarkana 1959, no writ) (stating that "the covenant 'to
repair' or 'to keep in repair' is essentially the same as the covenant to deliver up the
premises in good order and condition"). Yet, each contained additional language that the
other omitted and that further described the duty contemplated by the respective article. 
For instance, the repairs undertaken per article 13 during the leasehold had to be of the ilk
required to "at least" restore the item being repaired to the "quality [of] the original." The
same cannot be said, however, of repairs within the ambit of article 19; there, the standard
remained one of good condition but allowed for "reasonable wear and tear." That is, the
tenant had to return the property in as good condition as when first received except for
those items that deteriorated because of reasonable wear and tear. 

 So, as can be seen, the lease imposed two different duties upon Beverly. Though
each contemplated the property being in good condition, the scope of the duty viz
maintaining the property in that condition differed depending upon the period in the life of
the lease. During the lease term (i.e. as long as Beverly continued to use the premises),
Beverly had to maintain the property and correct deficiencies via means which returned it
to the "quality of the original." Yet, when the lease ended and Beverly relinquished the
property to the lessors, good condition no longer meant that the components of the facility
were to be repaired to the "quality of the original" but rather it entitled Beverly to return the
premises or parts thereof in a condition less than original in quality if the diminution was
attributable to reasonable wear and tear. See Nadler v. American Motors Sales Corp., 764
F.2d 409, 414 (5th Cir. 1985) (noting this difference in duties in a similarly worded lease).

 With the foregoing difference in duties in mind, we return to the Studer letter. Prior
to its delivery, Morton found fault in how Beverly complied with its duty to repair the
premises it continued to occupy. A September 1995 letter sent by his attorney indicated
as much; indeed, express reference was made to article 13 and Beverly's obligations under
it. (1) Several months later and days before the lease was to end, Studer forwarded to
Beverly a letter simply directing it to return the property "in the original condition delivered
. . . reasonable wear and tear excepted." Nothing was said in the letter about article 13 or
repairing the facility or its components to the "quality of the original." Rather, Studer used
words akin to those used in article 19 and permitting Beverly to return the facility without
correcting those conditions caused by reasonable wear and tear. So, comparison of the
two letters illustrated a difference in the demands being made upon Beverly. Earlier, the
lessors sought compliance from Beverly with both articles while later they sent a letter
demanding compliance with those duties mentioned in article 19 alone. 

 Waiver is defined as the intentional relinquishment of a known right or intentional
conduct inconsistent with claiming the right. Shaver v. Schuster, 815 S.W.2d 818, 824
(Tex. App.-Amarillo 1991, writ denied). Whether such occurred is normally a fact issue for
the jury to determine based upon the evidence and reasonable inferences therefrom. Id. 
Moreover, if some evidence of waiver appears of record and the defense is alleged in the
pleadings, then the trial court must instruct the jury of the matter. Hyundai Motor Co. v.
Rodriguez, 995 S.W.2d 661, 663-64 (Tex. 1999) (stating that the trial court must submit in
its charge all questions, instructions, and definitions raised by the pleadings and evidence);
Cresthaven Nursing Residence v. Freeman, 134 S.W.3d 214, 227 (Tex. App.-Amarillo
2003, no pet.) (requiring the same). Here, Beverly pled waiver in its supplemental answer. 
Furthermore, comparison of the September and February letters illustrate that the lessors
1) knew of articles 13 and 19 and the rights and duties encompassed in each and 2) days
before the lease was to end, demanded compliance with article 19, not article 13. This is
some evidence sufficient to create a fact issue regarding each element of waiver. And,
being sufficient to so create an issue of fact, the trial court was obligated to have the jury
determine if Morton waived compliance with article 13. By not doing so, the trial court
erred. Finally, the error was harmful given that waiver, if found by the jury to have
occurred, would have altered the damages recoverable by Morton. (2)

 In short, we sustain that portion of issue one involving the trial court's failure to
instruct the jury on waiver. Moreover, sustaining that issue relieves us from having to
address the remaining issues. Accordingly, we reverse the judgment of the trial court and
remand for further proceedings.


 Brian Quinn

 Chief Justice

1. So too did the letter refer to the condition in which the property had to be upon its return and as
contemplated by article 19. 
2. Though the jury generally was asked to determine the amount of damages suffered by Morton due
to Beverly's purported failure to comply with the lease provisions (which included articles 13 and 19), the trial
court also asked that it decide what amount of damages was attributable solely to the breach of article 19. 
The former sum was $848,310 while the latter was $100,000. Thus, had the jury been given the opportunity
to decide if Morton waived the rights contained in article 13, the amount of damages recoverable from Beverly
may have been quite less. 


="Colorful List Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-00323-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



AUGUST
19, 2010

 



 

ROCKY A. HILL, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 137TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2008-419,474; HONORABLE CECIL G. PURYEAR, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

Appellant, Rocky A. Hill, entered a
plea of guilty to four counts of aggravated robbery[1]
without benefit of any plea bargain. 
After hearing the punishment evidence, the trial court assessed
appellants punishment at confinement in the Institutional Division of the
Texas Department of Criminal Justice for a period of 20 years on each
count.  Appellant appeals this judgment.  We affirm.

 

Factual and
Procedural Background

Appellant presents a single issue for
our consideration.  Because the issue
raised by appellant does not touch upon the legal or factual sufficiency of the
evidence to support the convictions, we will limit our recitation of the facts
to those that are germane to the issue.  

Appellant was indicted on four counts
of aggravated robbery on March 25, 2008. 
On July 9, 2008, appellants trial counsel filed a motion suggesting
appellants incompetency to stand trial, and requesting that the trial court
enter an order for the examination of appellant by a competent expert.  The trial court entered an order to have
appellant examined by Dr. Robert Morgan to determine appellants competency to
stand trial.[2]  Appellant was examined by Dr. Robert Morgan
and Dr. Lucas Shaw.  Based on the
examination, the doctors reported back to the trial court that appellant was
competent to stand trial.  Subsequent to
the competency examination, appellants trial counsel filed a request to have
appellant examined regarding the issue of an insanity defense.[3]  On October 29, 2008, the trial court ordered
a second examination by Dr. Morgan on the issue of competency to stand
trial.  Notwithstanding the trial courts
order, Dr. Morgan examined appellant concerning insanity on July 28, 2009.  The report of this examination was filed with
the district clerks office on August 5, 2009. 


On August 17, 2009, appellant entered
guilty pleas, to each of the four counts of aggravated robbery.  After receiving appellants guilty pleas the
trial court ordered a pre-sentence investigation[4]
and set the hearing on punishment for August 31, 2009.  During the punishment hearing, both Dr.
Morgan and Dr. Shaw testified about the results of the competency examination
and the examination conducted for purposes of an insanity defense.  Each doctor testified that appellant was
competent to stand trial and that, at the time of commission of the indicted
offenses, the appellant was not suffering from a mental disease or defect such
that he did not know that his conduct was wrong.  Both doctors did testify that appellant
suffered from various mental health issues ranging from psychotic disorder not
otherwise specified, poly-substance dependence, and
malingering.  Appellants family also
presented testimony regarding appellants apparent mental health issues.  After hearing all of this evidence, the trial
court sentenced appellant to four concurrent 20 year sentences.  It is from these judgments that appellant
appeals.

Appellant presents a single issue alleging
that the trial court abused its discretion in failing to give due weight and
consideration to the mental disposition of the [appellant] and the possible
effect of not having available the diagnosis of the unclassified psychosis to
inform its determination of the level of punishment to assess.  This issue is multifarious, at best, and
makes it difficult for the Court to determine what action the trial court took
or failed to take that led to appellants rights being violated or the entry of
an erroneous judgment.  See Tex. R. App. P. 38.1(f).[5]  However, we will consider the issue raised in
light of the brief filed and try to determine, with reasonable certainty, the
alleged error of which appellant complains. 
See Stults v. State, 23
S.W.3d 198, 205 (Tex.App.Houston [14th
Dist.] 2000, pet. refd).  

Appellant appears to argue that,
based on the evidence presented during the punishment hearing, the trial court
had a duty to stop the punishment hearing on its own motion, and order
appellant be further examined for purposes of an insanity defense.  Additionally, appellant appears to contend
that this court should change the law in the State of Texas to recognize
irresistible impulse as a defense to prosecution under the provisions of the
insanity defense.  We find no error in
the procedure followed by the trial court and, therefore, we will affirm the
trial courts judgment.

Raising the Insanity Defense

A criminal defendant who desires to
raise the insanity defense does so by following the guidelines set forth in
chapter 46C of the Texas Code of Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. ch. 46C.   Under Texas law, insanity is an affirmative
defense to prosecution.  See Tex. Penal Code Ann. § 8.01 (Vernon 2003), Martinez v. State,
867 S.W.2d 30, 34 (Tex.Crim.App. 1993).  Under the current statutory scheme, a
criminal defendant is required to file a notice of intent to raise an insanity
defense at least 20 days before the case is set for trial.  See Tex.
Code Crim. Proc. Ann. art.
46C.051(b)(2).[6]  This process must be met or the criminal
defendant will not be allowed to introduce evidence on the issue of insanity,
absent good cause for failure to give the required notice.  See art. 46C.052.


In the case before the Court,
appellants counsel did not give the required notice.  The record reflects that a report of the
doctors second examination of appellant was filed in the district clerks
office on August 5, 2009.  This is within
the 20 day period of the statute.  See
art. 46C.051(b)(2). 
However, appellants trial counsel did not seek either a continuance or
a ruling that good cause existed for not giving the requisite 20 day
notice.  Whether or not counsel should
have done either is not an issue before this Court.  Simply speaking, any claimed error relating
to the trial courts failure to consider evidence of appellants insanity
defense was not preserved for our review. 
See Rule 33.1(a)(1)(A).  

As to appellants contention that the
trial court should have sua sponte
stopped the punishment hearing upon receiving evidence of appellants mental
health issues, appellant has presented no authority for that proposition.  Although appellant likens that procedure to
the procedure adopted for determining the competency of an individual to stand
trial, such comparison is without any authority.[7]  In fact, in ruling on the issue of the trial
courts duty to sua sponte order
an examination for purposes of an insanity defense under the previous statute,
our sister court has held that, since no notice was filed, there was no issue
of insanity before the trial court and the trial court had no duty to sua sponte order
any type of psychiatric examination.  See
Gomez v. State, Nos. 14-99-00465-CR & 14-99-00466-CR, 2001 Tex.App. LEXIS 2094, at *9-*12 (Tex.App.Houston [14th Dist.] Mar. 29, 2001, pet. refd)
(not designated for publication).  We
agree with the Gomez court, and hold that the trial court has no duty to
sua sponte stop
the punishment hearing to order a psychiatric examination for purposes of an
insanity defense when no timely notice of intent to pursue such a defense has
been given.  Accordingly, appellants
issue as to the sua sponte duty
of the trial court is overruled.

Conclusion

Having overruled appellants
contention, the judgment of the trial court is affirmed.

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Publish.

Campbell, J., concurring.      











[1] See Tex.
Penal Code Ann. § 29.03(a)(3) (Vernon 2003).





[2] See Tex.
Code Crim. Proc. Ann. ch.
46B. (Vernon Supp. 2009).

 





[3] See Tex.
Code Crim. Proc. Ann. ch. 46C. (Vernon 2006).





[4] See Tex.
Code Crim. Proc. Ann. art.
42.12(9) (Vernon Supp. 2009).

 





[5] Further reference to the Rules of Appellate Procedure
will be by reference to Rule ___.





[6] Further reference to the Texas Criminal Procedure
Code shall be by reference to art. ___.

 





[7]Most of appellants argument regarding the sua sponte duty
of the trial court is premised upon the proposition that irresistible impulse
should be a part of the insanity defense in the State of Texas.  However, irresistible impulse is not now,
nor has it ever been, recognized as a part of the affirmative defense of
insanity by the jurisprudence of the State of Texas.  See Freeman v. State, 317 S.W.2d 726, 730 (Tex.Crim.App.
1958).  For this court to include such a
doctrine into the affirmative defense doctrine of insanity would involve this Court
making the law and not simply insuring that the law is followed.  See Rodriguez v. State, 953
S.W.2d 342, 353 (Tex.App.Austin 1997, pet. refd) (citing Turner v. Cross, 18 S.W. 578, 579
(1892)).  This we cannot do.